## Case No. 12,456.

### SCHILLINGER v. GUNTHER.

[14 Blatchf. 152; 2 Ban. & A. 544; 11 O. G. 831; Merw. Pat. Inv. 165.] [1]

Circuit Court, S. D. New York. Feb. 26, 1877.

PATENTS—CONCRETE PAVEMENT—MAKING JOINTS —INFRINGEMENT—CONTEMPT OF COURT— AMOUNT OF FINE.

1. The invention set forth in reissued letters patent granted to John J. Schillinger, May 2d, 1871, for an improved concrete pavement, defined, and the claim construed.

[Cited in Kuhl v. Mueller, 21 Fed. 510; Schillinger v. Middleton, 31 Fed. 739; Consolidated Roller-Mill Co. v. Coombs, 39 Fed. 30; Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 586.]

[Cited in Schillinger v. Cranford, 4 Mackay (D. C.) 452.]

2. The claim is not confined to the making of joints by the permanent interposition of some material between the blocks, but it embraces the making of joints by the temporary interposition of a cutting material while the pavement

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. Merw. Pat. Inv. 165, contains only a partial report.]

is in process of formation, inasmuch as the latter method accomplishes the substantial results of the patentee's invention, in substantially the same way in which they are attained by the patentee.

[Cited in Schillinger v. Greenway Brewing Co., 17 Fed. 246; Shannon v. Bruner, 33 Fed. 290, 291; Electrical Accumulator Co. v. Julien Electric Co., 38 Fed. 135; California Artificial Stone-Pav. Co. v. Schalicke, 119 U. S 404, 7 Sup. Ct. 393.]

[Cited in Schillinger v. Cranford, 4 Mackay (D. C.) 478.]

3. Circumstances · stated which govern the amount of the fine to be imposed for a contempt of court by violating an injunction issued restraining the infringement of a patent.

[Cited in Hendryx v. Fitzpatrick, 19 Fed. 811.]

[This was a bill in equity by John J. Schillinger against Hermann A. Gunther for the infringement of letters patent No. 105,599, granted to J. J. Schillinger, July 19, 1870; reissued May 2, 1871 (No. 4,364). Heard on motion for an attachment.]

Edward Fitch and John Van Santvoord, for plaintiff.

Arthur v. Briesen, for defendant.

SHIPMAN, District Judge. This is a motion for an attachment for contempt of court by reason of the alleged violation of an injunction order. Reissued letters patent, dated May 2d, 1871, were issued to the plaintiff for an improved concrete pavement. The specification, including the portions subsequently disclaimed, and which are enclosed in parentheses, states that the invention "relates to a concrete pavement, which is laid in sections, so that each section can be taken up and relaid without disturbing the adjoining section. With the joints of this sectional concrete pavement are combined strips of tar paper or equivalent material, arranged between the several blocks or sections in such a manner as to produce a suitable tight joint, and yet allow the blocks to be raised separately without affecting the blocks adjacent thereto." After describing the composition of the concrete, the specification continues: "While the mass is plastic, I lay or spread the same on the foundation or bed of the pavement, either in moulds or between movable joists of the proper thickness, so as to form the edges of the concrete blocks, a a, one block being formed after the other. When the first block has set, I remove the joists or partitions between it and the block next to be formed, and then I form the second block, and so on, each succeeding block being formed after the adjacent blocks have set; (and, since the concrete, in setting, shrinks, the second block, when set, does not adhere to the first, and so on;) and, when the pavement is completed, each block can be taken up independent of the adjoining blocks. Between the joints of the adjacent blocks are placed strips, b, of tar paper, or other suitable ma-

terial, in the following manner: After completing one block, a, I place the tar paper, b, along the edge where the next block is to be formed, and I put the plastic composition for such next block up against the tar paper joint, and proceed with the formation of the new block until it is completed. In this manner, I proceed until the pavement is completed, interposing tar paper between the several joints, as described. The paper constitutes a tight water-proof joint, but it allows the several blocks to heave separately from the effects of frost, or to be raised or removed separately, whenever occasion may arise, without injury to the adjacent blocks. * * * (In such cases, however, where cheapness is an object, the tar paper may be omitted, and the blocks formed without interposing anything between their joints, as previously described. In this latter case the joints soon fill up with sand or dust, and the pavement is rendered sufficiently tight for many purposes, while the blocks are detached from each other, and can be taken up and relaid, each independent of the adjoining blocks.)" The claims are: "(1) A concrete pavement laid in detached blocks or sections, substantially in the manner shown and described; (2) the arrangement of tar paper, or its equivalent, between adjoining blocks of concrete, essentially as, and for the purpose, set forth." On February 2d, 1875, the plaintiff disclaimed the portions included in parentheses, and, in his disclaimer, also said: "Your petitioner hereby disclaims the forming of blocks from plastic material without interposing anything between the joints, while in the process of formation."

In April, 1875, the bill in equity of the plaintiff against the defendant, alleging an infringement of said letters patent, and praying for an injunction and an account, was heard upon the pleadings and proofs by this court. It was clearly proved that the defendant had made and laid the pavement described in the patent, except that he had substituted tin foil between the joints in lieu of tar paper. An attempt was made to show that the invention had been anticipated by other manufacturers of concrete pavement in this country, which attempt was unsuccessful. The American patent of Horace P. Russ, dated March 14th, 1848, and the English patent of John Little, dated April 29th, 1864, were also relied upon by the defendant, as anticipatory of the plaintiff's invention. Mr. Russ's invention consisted of a foundation pavement of concrete, which was afterwards to be covered with ordinary stone flagging. This sub-pavement of concrete was divided, in places where it covered a sewer or a drain, into panels, by bars of iron forming crosses, united by an eyebolt, with a ring in the head of each bolt. When repairs were to be made upon the sewer the panel could be lifted, without injury

to the rest of the concrete, by suitable appliances attached to the ring. The Little patent was for a metallic frame work, filled in with concrete blocks. Neither device had substantial similarity to the pavement of the plaintiff. As the novelty of the plaintiff's invention was not disproved, and as the infringement was manifest, a decree was rendered directing an injunction and an accounting before a master.

The plaintiff has now filed a motion for attachment, claiming that the defendant is violating the injunction and the patent, by the construction of the pavement which is hereafter described. As the parties were at issue upon the manner in which the pavement was constructed, a reference was directed to a master to find the facts, who has reported as follows: "The ground was prepared by grading to four inches below the final and completed surface of such pavement. Upon the surface of the ground so graded were placed wooden frames or mould-boards, four inches in height or thickness. In such frames or mould-boards were first formed the one-half of the proposed diamond-shaped blocks. The said frames were then removed back, so that their points of separation rested against and accorded with the points of the half blocks of pavement already laid, thus making, by means of the sides of the two completed half blocks and the two sides of the frames or mould-boards, the shape for the diamond-shaped block to be made by the next operation. The materials used and the manner of using them were as follows: A lower course upon the ground as graded was laid, composed of one part of cement, three parts of sand and two parts of gravel or broken stone, (none of the particles of such gravel or broken stone exceeding two inches in diameter.) This lower course was laid to the depth of three inches and stamped down. Before the second block is thus laid in its lower course, the lower course of the first block is allowed to become 'well set.' After the lower layer has been thus laid to within one inch of the final surface, the upper layer is then put on, which upper layer consists of one part of cement and one part of fine sand, such upper layer being put upon the first-formed block first and shortly after such first block has been made with the bottom layer thereon. The top layer of cement and sand was then placed upon the bottom layer of the second block, up to and against the top layer of the first block, and the laying of the pavement was thus continued. After the laying of two adjoining blocks, and while the upper material for the second block was in a soft or plastic state, a trowel or other similar instrument was inserted between the top layers of the first and second block through the upper layer, for the purpose of making a separation or joint between them, thus making what is commonly known and designated as a 'block pavement.'" It is conceded that this description of the method in which the pavement is made is correct.

The question at issue between the parties is, whether a pavement constructed in the manner described is an infringement of the patent. That the defendant's pavement is constructed of separate layers of coarse and fine cement, I do not regard as material. The upper layer is divided into blocks by the insertion of a trowel after the separate sections have been made in the frame, and while the concrete of the second block is still plastic. The defendant thus makes a block pavement, which can be taken up, so far as the blocks into which the top layer is divided are concerned, without injury to the adjoining blocks. The pavement possesses the advantage of the plaintiff's invention. The plaintiff forms his joint by the permanent interposition of some material between the blocks, which material also serves, in some degree, to make a tight joint. The defendant forms a joint by the insertion of a cutting instrument between the blocks, and then removing the instrument, leaving the joint an open one for the time. The question between the parties becomes one of construction of the patent. Is the patent confined to the making of the joints by the permanent interposition of some material between the blocks, or does it embrace the making of joints by the temporary interposition of a cutting material while the pavement is in process of formation? For the purpose of determining this question, it is necessary to ascertain the actual invention of the patentee.

It was manifest, upon the former hearing of this case, that the old method of laying cement or concrete pavement was in sections between joists or frames, without any attempt to divide the pavement into blocks. The pavement was a uniform surface of concrete, subject to contraction and expansion from natural causes, and, when it became cracked through the agency of frost, was not easily repaired. The improvement and the invention consisted in dividing the pavement into blocks, so that one block might be removed and repaired without injury to the rest of the pavement. Although this improvement, however effected, whether by the insertion of a trowel, or by the permanent interposition of some other means of separation between the blocks, now appears to have been a simple invention, yet it was one which the history of the art shows to have been previously unknown, and to have been of practical importance, and to have been received with much favor by the public. The plaintiff supposed that his invention included a block pavement in which the blocks were formed either with or without the interposition of something between the joints. He subsequently ascertained that he was mistaken, and that the pavement was not divided into blocks without the interposition of some material to form joints. The discovery of this fact led to his disclaimer, wherein he disclaimed the forming of blocks from plastic material without interposing anything between the joints. This disclaimer left the patent for a

pavement, wherein the blocks were formed by the interposition of some separating material between the joints, and, in the specification, he has described tar paper, or its equivalent.

A strict construction of the patent would limit the patented invention to the permanent interposition of the equivalent material, but such a construction would be a limitation of the actual invention. The method adopted by the defendant accomplishes the substantial results of the plaintiff's invention, in substantially the same way in which they are attained by the plaintiff. The difference in method is, that the material is not permanently interposed between the blocks, and this leads to the only difference in result, which is, that the defendant's method leaves an open joint, instead of the tight joint of the plaintiff, which is not the material part of the plaintiff's invention. The material part was to make a cement pavement separated into blocks by joints. This was the end to be accomplished by each party. Inasmuch, then, as the plaintiff's actual invention is substantially reproduced by the defendant and there is substantial identity in the means by which the material portion of the result was accomplished, I am of opinion that the mode of operation which the defendant has adopted, is within the proper limits of the patent, and is included within the first claim.

The well known and just principle of the courts of this country is, that a liberal construction is to be given to the language of all patents and specifications, ut res magis valeat quam pereat. In pursuance of that rule, "the technical claims in a patent are to be construed with reference to the state of the art, so as to limit the patentee to, and give him the full benefit of, the invention he has made." Estabrook v. Dunbar [Case No. 4,535].

It was well understood by both parties, upon the argument, that the object of the motion was not to mulct the defendant in damages, but to obtain a decision in regard to the extent to which the plaintiff was to be protected in the enjoyment of his patent, which had been decided to be valid and to have been infringed. I am of opinion, from all the circumstances which are disclosed in the affidavits and the testimony before the master, that there has been a studied attempt on the part of the defendant to obtain the benefit of the plaintiff's invention. But I am not disposed to impose a severe fine, in view of the fact which has been stated. The motion is granted, and a nominal fine of fifty dollars, in addition to a sum equal to the fees of the master upon this reference, is imposed upon the defendant, to be paid to the plaintiff as partial indemnity for his expenses.

[For other cases involving this patent, see Schillinger v. Gunther, Cases Nos. 12,457 and 12,458; Schillinger v. Greenway Brewing Co., 17 Fed. 244; Kuhl v. Mueller, 21 Fed. 510; California Artificial Stone Pav. Co. v. Molitor, 113 U. S. 609, 5 Sup. Ct. 618; California Artificial Stone Pav. Co. v. Perine, 8 Fed. 821; California Artificial Stone Pav. Co. v. Freeborn, 17 Fed. 735.]