## CALIFORNIA PAVING CO. *v.* SCHALICKE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Submitted December 6, 1886. — Decided December 20, 1886.

Reissued letters-patent No. 4364, granted to John J. Schillinger, May 2d, 1871, for an improvement in concrete pavements, on the surrender of original letters-patent No. 105,559, granted to him July 19th, 1870, are not, in view of the disclaimer filed by the patentee, March 1st, 1875, infringed by the defendant's pavement in this case.

Bill in equity to restrain infringements of letters-patent. The case is stated in the opinion of the court.

*Mr. M. A. Wheaton* for appellant.

*Mr. Manuel Eyre* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought by the California Artificial Stone Paving Company, a California corporation, against F. W. Schalicke, to recover for the infringement of reissued let-

ters-patent No. 4364, granted to John J. Schillinger, May 2d, 1871, for an improvement in concrete pavements, on the surrender of original letters-patent No. 105,559, granted to him July 19th, 1870. The specification and drawings of the reissued patent are as follows:

"Figure 1 represents a plan of my pavement. Figure 2 is a vertical section of the same. Similar letters indicate corresponding parts.

*Fig. 1.*

*Fig. 2.*

"This invention relates to a concrete pavement, which is laid in sections, so that each section can be taken up and relaid without disturbing the adjoining sections. With the joints of this sectional concrete pavement are combined strips of tar-paper, or equivalent material, arranged between the several blocks or sections in such a manner as to produce a suitable tight joint and yet allow the blocks to be raised separately without affecting the blocks adjacent thereto.

"In carrying out my invention, I form the concrete by mixing cement with sand and gravel, or other suitable material, to

form a plastic compound, using about the following propor-
tions: One part, by measure, of cement, one part, by measure,
of sand, and from three to six parts, by measure, of gravel,
with sufficient water to render the mixture plastic; but I do
not confine myself to any definite proportions or materials for
making the concrete composition.   While the mass is plastic,
I lay or spread the same on the foundation or bed of the pave-
ment, either in molds or between movable joists of the proper
thickness, so as to form the edges of the concrete blocks, $a$, $a$,
one block being formed after the other.   When the first block
has set, I remove the joists or partitions between it and the
block next to be formed, and then I form the second block,
and so on, each succeeding block being formed after the adja-
cent blocks have set, [and, since the concrete in setting shrinks,
the second block, when set, does not adhere to the first, and so
on,] and, when the pavement is completed, each block can be
taken up independent of the adjoining blocks.   Between the
joints of the adjacent blocks are placed strips, $b$, of tar-paper,
or other suitable material, in the following manner: After
completing one block, $a$, I place the tar-paper, $b$, along the
edge where the next block is to be formed, and I put the plas-
tic composition for such next block up against the tar-paper
joint, and proceed with the formation of the new block until
it is completed.   In this manner I proceed until the pavement
is completed, interposing tar-paper between the several joints,
as described.   The paper constitutes a tight water-proof joint,
but it allows the several blocks to heave separately, from the
effects of frost, or to be raised or removed separately, when-
ever occasion may arise, without injury to the adjacent blocks.
The paper, when placed against the block first formed, does
not adhere thereto, and, therefore, the joints are always free
between the several blocks, although the paper may adhere to
the edges of the block or blocks formed, after the same has
been set up in its place between the joints.   [In such cases,
however, where cheapness is an object, the tar-paper may be
omitted, and the blocks formed without interposing anything
between their joints, as previously described.   In this latter
case, the joints soon fill up with sand or dust, and the pave-

ment is rendered sufficiently tight for many purposes, while the blocks are detached from each other, and can be taken up and relaid, each independent of the adjoining blocks.]

"What I claim as new, and desire to secure by letters-patent, is —

"1. A concrete pavement laid in detached blocks or sections, substantially in the manner shown and described.

"2. The arrangement of tar-paper, or its equivalent, between adjoining blocks of concrete, substantially as, and for the purpose, set forth."

On the 1st of March, 1875, Schillinger filed in the Patent Office a disclaimer, in which he disclaimed the matter above enclosed in brackets, and stated, also, that he disclaimed "the forming of blocks from plastic material without interposing anything between their joints while in the process of formation."

The only defence set up in the answer is non-infringement. After a hearing, on proofs, the Circuit Court dismissed the bill, on the ground that the defendant's pavement did not infringe either one of the two claims of the patent.

This patent has been construed by several Circuit Courts since the disclaimer was filed. In *Schillinger* v. *Gunther*, 14 Blatchford, 152, in the Southern District of New York, in February, 1877, the defendant's pavement had a bottom layer of coarse cement, on which was laid a course of fine cement, divided into blocks by a trowel run through that course while plastic. It possessed the advantage of Schillinger's invention, because any blocks in the upper course could be taken up without injury to the adjoining blocks. Concrete pavement having been before laid in sections, without being divided into blocks, the invention of Schillinger was held to consist in dividing the pavement into blocks, so that one block could be removed and repaired without injury to the rest of the pavement, the division being effected by either a permanent or a temporary interposition of something between the blocks. It was held that the effect of the disclaimer was to leave the patent to be one for a pavement wherein the blocks are formed by interposing some separating material between the joints;

that to limit the patent to the permanent interposition of a material equivalent to tar-paper, would limit the actual invention; that using the trowel accomplished the substantial results of the invention in substantially the same way devised by Schillinger; that the only difference in result was that the defendant's method left an open joint; that having a tight joint was not a material part of Schillinger's invention; and that the mode of operation involved in using the trowel was within the first claim of the reissue as it stood after the disclaimer.

In the same suit, 17 Blatchford, 66, in August, 1879, it was held, that the disclaimer took out of the first claim of the reissue only so much thereof as claimed a concrete pavement made of the plastic material laid in detached blocks, without interposing anything between the joints in the process of formation, leaving the claim to be one for such a pavement laid in detached blocks, when free joints are made between the blocks, by interposing tar-paper or its equivalent.

In *California Artificial Stone Paving Co.* v. *Molitor,* 7 Sawyer, 190, in the District of California, in May, 1881, the defendant's pavement was made by cutting a lower course into sections with a trowel, to a greater or less depth, according to the character of the material, making a joint, and doing the same with an upper course, the upper joint being directly over the lower joint. Into the open joint, in each case, was loosely put some of the partially set material from the top of the laid course, answering the purpose of tar-paper. A blunt and rounded joint-marker, which was said to be $\frac{1}{16}$ or $\frac{1}{8}$ of an inch in depth, was then run over the line of the joints, marking off the block. The pavement was weaker along the line of the joint than in any other place. This was held to be an infringement.

In *California Artificial Stone Paving Co.* v. *Freeborn,* 8 Sawyer, 443, in the District of California, in January, 1883, it was held, that, where nothing was interposed in the joint between a newly laid block and one laid before, but, after the material in the newly laid block had partially set, a blunt and rounded joint-marker, $\frac{1}{16}$ of an inch in depth, was run along

the line between the newly laid block and the one laid before, there was no infringement.

In *Schillinger* v. *Greenway Brewing Co.*, 21 Blatchford, 383, in the Northern District of New York, in July, 1883, it was held, that the 2d claim of the reissue was infringed by a concrete pavement which had an open cut made by a trowel entirely through two courses of material, the line of cut in the upper course being directly over the line of cut in the lower course; and that the interposition of the trowel, though temporary, was an equivalent for the tar-paper, even though the joint was left open after the trowel was removed, and was not made tight.

In *Kuhl* v. *Mueller*, 21 Fed. Rep. 510, in the Southern District of Ohio, in June, 1884, it was held, that the use of any marker was an infringement which made a cut or depression having the effect to cause the pavement to break by upheaval, or cracking, from any cause, along the line of the cut or depression; and that, as the blocks from the pavements laid by the defendant showed clear, distinct, and complete lines of division, there was infringement, whether those lines were produced by a trowel or by a marker.

The evidence in the present case shows that the defendant, during the process of making his pavement, marked off its surface into squares. But the question is whether he, to any extent, divided it into blocks, so that the line of cracking was controlled, and induced to follow the joints of the divisions, rather than the body of the block, and so that a block could be taken out, and a new one put in its place, without disturbing or injuring an adjoining block. The specification makes it essential that the pavement shall be so laid in sections "that each section can be taken up and relaid without disturbing the adjoining sections." Again, it says, that the joint between the blocks "allows the several blocks to heave separately, from the effects of frost, or to be raised or removed separately, whenever occasion may arise, without injury to the adjacent blocks." This is essential; and, in all the cases where infringement has been held to have been established, there have been blocks substantially separate, made so by the permanent or

temporary interposition of a separating medium or a cutting instrument, so that one block could upheave or be removed without disturbing the adjoining blocks. The patentee, in the disclaimer, expressly disclaimed "the forming of blocks from plastic material without interposing anything between their joints while in the process of formation."

It appears that the defendant laid his pavement in strips from the curb of the sidewalk inward to the fence, in one mass, and then marked the strip crosswise with a blunt marker, which is made an exhibit, to the depth of about one sixteenth of an inch. But it is not shown that this produced any such division into blocks as the patent speaks of, even in degree. There were no blocks produced, and, of course, there was nothing interposed between blocks, The mass underneath was solid, in both layers, laterally. So far as appears, what the defendant did was just what the patentee disclaimed. The marking was only for ornamentation, and produced no free joints between blocks, and the evidence as to the condition of the defendant's pavements after they were laid shows that they did not have the characteristic features above mentioned as belonging to the patented pavement.

Without affirming or disaffirming the constructions given to the patent in the particular cases cited from the Circuit Courts, we are of opinion that, under any construction which it is possible to give to the claims, the defendant in this case has not infringed.

*Decree affirmed.*