# HURLBUT *v.* SCHILLINGER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 215. Argued March 19, 1889. — Decided April 22, 1889.

Reissued letters patent No. 4364, granted to John J. Schillinger, May 2, 1871, for an "improvement in concrete pavements," on the surrender of original letters patent No. 105,599, granted to said Schillinger, July 19, 1870, were valid.

The proper construction of the claims of the reissue stated, in view of a disclaimer filed March 1, 1875.

The questions of utility, novelty and infringement considered.

The entire profit made by the defendant from laying his pavement was given to the plaintiff, because it appeared that it derived its entire value from the use of the plaintiff's invention; that if it had not been laid in that way it would not have been laid at all; and that the profit made by the defendant was a single profit derived from the construction of the pavement as an entirety.

In EQUITY, to restrain alleged infringement of letters patent and for damages. Decree in favor of the complainants. Respondent appealed. The case is stated in the opinion.

*Mr. L. L. Bond,* (with whom was *Mr. E. A. West* on the brief,) for appellants, cited: *Smith* v. *Nichols,* 21 Wall. 112; *Roberts* v. *Ryer,* 91 U. S. 150, 159; *Heald* v. *Rice,* 104 U. S. 737, 755; *Atlantic Works* v. *Brady,* 107 U. S. 192; *Railroad Co.* v. *Sayles,* 97 U. S. 554; *Duff* v. *Sterling Pump Co.,* 107 U. S. 636; *Carver* v. *Hyde,* 16 Pet. 513; *Burr* v. *Duryee,* 1 Wall. 531; *Fuller* v. *Yentzer,* 94 U. S. 288; *Brooks* v. *Fiske,* 15 How. 212; *Snow* v. *Lake Shore Railway Co.,* 121 U. S. 617; *Ashcroft* v. *Railroad Co.,* 97 U. S. 189; *Mathews* v. *Machine Co.,* 105 U. S. 54; *Bridge* v. *Excelsior Co.,* 105 U. S. 618; *Neacy* v. *Allis,* 13 Fed. Rep. 784; *McCormick* v. *Talcott,* 20 How. 402; *Schillinger* v. *Gunther,* 2 Ban. & Ard. Pat. Cas. 544; *S. C.* 3 Ban. & Ard. Pat. Cas. 491; *Schillinger* v. *Greenway Brewing Co.,* 17 Fed. Rep. 244; *California Stone Paving Co* v. *Perine,* 8 Fed. Rep. 821; *California Stone Paving Co.* v

*Freeborn,* 17 Fed. Rep. 735; *Schillinger* v. *Middleton,* 31 Fed. Rep. 736; *Cammeyer* v. *Newton,* 94 U. S. 225; *Bates* v. *Coe,* 98 U. S. 31; *Garretson* v. *Clark,* 111 U. S. 120; *Black* v. *Thorne,* 111 U. S. 122; *Brown* v. *Piper,* 91 U. S. 41; *Vance* v. *Campbell,* 1 Black, 427; *Agawam Co.* v. *Jordan,* 7 Wall. 583; *Blanchard* v. *Putnam,* 8 Wall. 420; *Slawson* v. *Grand Street Railroad,* 107 U. S. 649; *Terhune* v. *Phillips,* 99 U. S. 592; *Gill* v. *Wells,* 22 Wall. 1, 29; *Guidet* v. *Brooklyn,* 105 U. S. 650; *Phillips* v. *Detroit,* 111 U. S. 604; *New York Belting Co.* v. *Sibley,* 15 Fed. Rep. 386; *Tyler* v. *Welch,* 3 Fed. Rep. 636; *White* v. *Gleason M'f'g Co.,* 17 Fed. Rep. 159; *Dunbar* v. *Myers,* 94 U. S. 187; *Atlantic Giant Powder Co.* v. *Hulings,* 21 Fed. Rep. 519; *Union Cartridge Co.* v. *U. S. Cartridge Co.,* 112 U. S. 624; *Hollister* v. *Benedict M'f'g Co.,* 113 U. S. 59.

*Mr. George W. Hey,* for appellees, cited: *Schillinger* v. *Gunther,* 14 Blatchford, 152; *S. C.* 17 Blatchford, 66; *California Stone Paving Co.* v. *Perine,* 8 Fed. Rep. 821; *Schillinger* v. *Brewing Company,* 24 O. G. 495; *Kuhl* v. *Mueller,* 21 Fed. Rep. 510; *California Stone Paving Co.* v. *Freeborn,* 17 Fed. Rep. 735; *California Stone Paving Co.* v. *Molitor,* 113 U. S. 613; *Grant* v. *Raymond,* 6 Pet. 218; *Ames* v. *Howard,* 1 Sumner, 482, 485; *Blanchard* v. *Sprague,* 3 Sumner, 535, 539; *Davoll* v. *Brown,* 1 Woodb. & Min. 53, 57; *Parker* v. *Hayworth,* 4 McLean, 370; *Le Roy* v. *Tatham,* 14 How. 156, 181; *Warswick M'f'g Co.* v. *Steiger,* 17 Fed. Rep. 250; *Tilghman* v. *Proctor,* 125 U. S. 136; *Brady* v. *Atlantic Works,* 3 Ban. & Ard. Pat. Cas. 577; *Cox* v. *Griggs,* 2 Fish. Pat. Cas. 174; *Hays* v. *Sulsor,* 1 Fish. Pat. Cas. 532; *Bell* v. *Daniels,* 1 Fish. Pat. Cas. 372; *Wayne* v. *Holmes,* 2 Fish. Pat. Cas. 20; *Serrell* v. *Collins,* 1 Fish. Pat. Cas. 289; Curtis on Patents, § 338; *Lowett* v. *Lewis,* 1 Mass. 184.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Northern District of Illinois, by John J. Schillinger and Elmer J. Salisbury against J. B. Hurlbut,

founded on the alleged infringement of reissued letters pat
ent, No. 4364, granted to John J. Schillinger, May 2, 1871,
for an "improvement in concrete pavements," on the surren-
der of original letters patent No. 105,599, granted to said
Schillinger, July 19, 1870. The defences set up in the answer
are the invalidity of the reissue, want of utility in the inven-
tion, want of novelty and non-infringement.

The bill was filed in October, 1882. Salisbury having died,
the suit was, so far as his interest was concerned, revived in
March, 1884, in the name of Olive G. Salisbury, as adminis-
tratrix. The interest of Salisbury was that he was the exclu-
sive licensee under the reissued patent for the State of Illinois.
Issue having been joined, proofs were taken on both sides, and
on the 15th of May, 1884, the court entered an interlocutory
decree, adjudging that the reissued patent was valid, that the
defendant had infringed it, and that the administratrix of
Salisbury recover profits and damages from the 26th of
August, 1882, the date of the license to Salisbury. The
decree also ordered a reference to a master to take an account
of the profits and the damages.

The master took proofs, and on the 30th of September,
1884, filed his report, to the effect that between August 26,
1882, and May 20, 1884, the defendant had laid 70,909 feet of
pavement by the use of the plaintiff's patent, for which he
should be held to account; and that the plaintiffs had shown
an established license fee of five cents a square foot, or
$3545.45, as damages, which amount he reported. He also
reported that the defendant's profits had amounted to four
cents a square foot. The defendant excepted to this report,
and, on a hearing, the court held that the evidence did not
establish a fixed license fee as a royalty, and that the proper
amount of recovery was the defendant's profits, at the rate of
four cents a square foot, or $2836.36; and it entered a final
decree, on the 16th of November, 1885, for that amount.
The defendant has appealed from that decree.

The specifications, claims and drawings of the original and
the reissued patents are as follows, the specifications and
claims being placed in parallel columns, the parts of each

which are not found in the other being in italic, and the drawings of the original and the reissue being the same:

| *Original.* | *Reissue.* |
|---|---|
| "Be it known that I, John J. Schillinger, of the city, county, and State of New York, have invented a new and useful improvement in concrete pavements; and I do hereby declare the following to be a full, clear, and exact description thereof, which will enable those skilled in the art to make and use the same, reference being had to the accompanying drawing, forming part of this specification, in which drawing — | "Be it known that I, John J. Schillinger, of the city, county, and State of New York, have invented a new and useful improvement in concrete pavements; and I do hereby declare the following to be a full, clear, and exact description thereof, which will enable those skilled in the art to make and use the same, reference being had to the accompanying drawing, forming part of this specification, in which drawing — |
| "Figure 1 represents my pavement *in plan view.* Fig. 2 is a vertical section of the *pavement.* | "Figure 1 represents *a plan of* my pavement. Fig. 2 is a vertical section of the *same. Similar letters indicate corresponding parts.* |

*Fig.1.*

*Fig.2.*

"This invention relates to pavements for sidewalks and other purposes, and consists in combining, with the joints of concrete pavements, strips of tar-paper or equivalent material arranged between the several blocks in such a manner as to produce a suitable tight joint and yet allow the blocks to be raised separately without affecting or injuring the blocks adjacent thereto.

"In carrying out my invention I form the concrete by mixing cement with sand and gravel or other suitable materials to form a suitable plastic composition, using about the following proportions: One part, by measure, of cement; one part, by measure, of sand, and from three to six parts, by measure, of gravel, using sufficient water to make the mixture plastic; but I do not confine myself to any proportions for making the concrete composition. While the mass

"This invention relates to a concrete pavement which is laid in sections, so that each section can be taken up and relaid without disturbing the adjoining sections. With the joints of this sectional concrete pavement are combined strips of tar-paper or equivalent material arranged between the several blocks or sections in such a manner as to produce a suitable tight joint and yet allow the blocks to be raised separately without affecting the blocks adjacent thereto.

"In carrying out my invention I form the concrete by mixing cement with sand and gravel or other suitable material to form a plastic compound, using about the following proportions: One part, by measure, of cement; one part, by measure, of sand, and from three to six parts by measure, of gravel, with sufficient water to render the mixture plastic; but I do not confine myself to any definite proportions or materials for making the concrete composi-

is plastic I lay or spread the same *upon* the foundation or bed of the pavement, either in *moulds* or between movable joists of the proper thickness, so as to form the edges of the concrete blocks *a a,* &c. When the block *a* has *been formed* I *take strips of tar-paper b, of a width equal or almost equal to the height of the block, and place them up against the edges of the block in such a manner that they form the joints between such block and the adjacent blocks.* After completing one block, *a,* I place the tar-paper *b* along the edge where the next block is to be formed, and I put the plastic composition for such next block up against the tar-paper joint and proceed with the formation of the new block until it is completed. In this manner I proceed *in making all the blocks* until the pavement is completed, interposing tar-paper between their several joints, as described. The paper constitutes a tight water-proof joint, but it allows the several blocks to heave separately from the effects of frost, or to be raised or removed separately, whenever occasion may arise, without injury to the adjacent blocks.

tion. While the mass is plastic I lay or spread the same *on* the foundation or bed of the pavement, either in *moulds* or between movable joists of the proper thickness, so as to form the edges of the concrete blocks *a a, one block being formed after the other.* When the *first* block has *set* I *remove the joists or partitions from between it and the next block to be formed, and then I form the second block, and so on, each succeeding block being formed after the adjacent blocks have set,* [*and since the concrete in setting shrinks, the second block when set does not adhere to the first, and so on,*] *and when the pavement is completed each block can be taken up independent of the adjoining blocks. Between the joints of the adjacent blocks are placed strips b of tar-paper or other suitable material in the following manner:* After completing one block, *a,* I place the tar-paper *b* along the edge where the next block is to be formed, and I put the plastic composition for such next block up against the tar-paper joint and proceed with the formation of the new block until it is completed. In this manner I proceed until the pavement is

The paper *does not adhere* when placed against the *edge of the fully formed* block, and therefore the joints are always free between the several blocks, although *adherence may take place between the paper and* the *plastic* edges of the blocks *which are* formed after the *paper* joints *are set up in place.*

"What I claim as new and desire to secure by letters-patent is —

completed, interposing tar-paper between the several joints, as described. The paper constitutes a tight, water-proof joint, but it allows the several blocks to heave separately from the effects of frost, or to be raised or removed separately, whenever occasion may arise, without injury to the adjacent blocks. The paper when placed against the block *first formed does not adhere thereto,* and therefore the joints are always free between the several blocks, although *the paper may adhere to* the edges of the *block or* blocks formed after the *same has been set up in its place between the* joints. [*In such cases, however, where cheapness is an object, the tar-paper may be omitted and the blocks formed without interposing anything between their joints, as previously described. In this latter case the joints soon fill up with sand or dust, and the pavement is rendered sufficiently tight for many purposes, while the blocks are detached from each other and can be taken up and relaid each independent of the adjoining blocks.*]

"What I claim as new and desire to secure by letters-patent is —

"The arrangement of tar-paper or its equivalent between adjoining blocks of concrete, substantially as and for the purpose *described*."

"1. A concrete pavement laid in detached blocks or sections, substantially in the manner shown and described.

"2. The arrangement of tar-paper or its equivalent between adjoining blocks of concrete, substantially as and for the purpose *set forth*."

On the 1st of March, 1875, Schillinger filed in the Patent Office the following disclaimer: "To the Commissioner of Patents: Your petitioner, John J. Schillinger, of the city and county and State of New York, represents that letters patent of the United States, reissue No. 4364, bearing date May 2, 1871, were granted to him for an improvement in concrete pavements. That he has reason to believe that, through inadvertence, accident, or mistake, the specification and claim of said letters patent are too broad, including that of which your petitioner was not the first inventor, and he therefore hereby enters his disclaimer to the following words: 'And since the concrete in setting shrinks, the second block when set does not adhere to the first, and so on,' and which occurs near the middle part of the said specification, and to the following words near the end of the specification: 'In such cases, however, where cheapness is an object, the tar-paper may be omitted and the blocks formed without interposing anything between their joints, as previously described. In this latter case the joints soon fill up with sand or dust, and the pavement is rendered sufficiently tight for many purposes, while the blocks are detached from each other and can be taken up and relaid each independent of the adjoining blocks.' Your petitioner hereby disclaims the forming of blocks from plastic material without interposing anything between their joints while in the process of formation. Your petitioner owns the said patent and the whole interest therein, except in the following places or territory, for which he has granted exclusive licenses under royalty, or sold rights under said patent, to wit, the counties of

Kings, Queens, and Richmond, New York State; Hartford County, Connecticut; the District of Columbia; the States of New Jersey, Georgia, Maryland, Louisiana, Texas, Ohio, Michigan, Missouri. and Illinois, which above-named States and places comprise all the territory for which he has sold or granted exclusive licenses or rights in or under said patent, to the best of his recollection, knowledge and belief."

The words specifically disclaimed by the disclaimer are embraced in brackets in the copy of the specification of the reissue above set forth.

The Schillinger patent has been before several of the Circuit Courts of the United States, and also before this court, for adjudication.

In the Circuit Court for the Southern District of New York, before Judge Shipman, in February, 1877, in *Schillinger* v. *Gunther*, 14 Blatchford, 152, and 2 Ban. & Ard. Pat. Cas. 544, and 11 Off. Gaz. 831, and in the same case, before Judge Blatchford, in August, 1879, 17 Blatchford, 66, and 4 Ban. & Ard. Pat. Cas. 479, and 16 Off. Gaz. 905; in the Circuit Court for the District of California, before Judge Sawyer, in May, 1881, in *California Artificial Stone Paving Co.* v. *Molitor*, and *The Same* v. *Perine*, 7 Sawyer, 190, and 8 Fed. Rep. 821, and 20 Off. Gaz. 813; in the Circuit Court for the Northern District of New York, before Judge Blatchford, in July, 1883, in *Schillinger* v. *Greenway Brewing Co.*, 21 Blatchford, 383, and 17 Fed. Rep. 244, and 24 Off. Gaz. 495; and in the Circuit Court for the Southern District of Ohio, before Judge Sage, in June, 1884, in *Kuhl* v. *Mueller*, 21 Fed. Rep. 510, and 28 Off. Gaz. 541; the patent was sustained. In the Supreme Court of the District of Columbia, in general term, in July, 1885, in *Schillinger* v. *Cranford*, 4 Mackey, 450, and 37 Off. Gaz. 1349, it was held void, on the question of novelty. It was also interpreted by Judge Sawyer, in the Circuit Court for the District of California, in *California Artificial Stone Paving Co.* v. *Freeborn*, in January, 1883, 8 Sawyer, 443, and 17 Fed. Rep. 735, and by Judge Deady, in the Circuit Court for the District of Oregon, in August, 1887, in *Schillinger* v. *Middleton*. 31 Fed. Rep. 736.

The patent was before this court in *California Paving Co.* v. *Molitor*, 113 U. S. 609, in March, 1885, but only on a question of contempt, and in *California Paving Co.* v. *Schalicke*, 119 U. S. 401, in December, 1886.

We are of opinion that the proper construction of the reissued patent is, that the invention consists in dividing the pavement into blocks, so that one block can be removed and repaired without injury to the rest of the pavement, the division being effected by either a permanent or a temporary interposition of something between the blocks. Concrete pavement had been laid before in sections, without being divided into blocks. The effect of the disclaimer was to leave the patent to be one for a pavement wherein the blocks are formed by interposing some separating material between them. To limit the patent to the permanent interposition of a material equivalent to tar-paper, would limit the actual invention. The use of a bottom layer of coarse cement, and placing on it a course of fine cement, and dividing the upper course into blocks by a trowel run partially or wholly through the upper course while it is plastic, in a line coincident with the joints between the sections in the lower layer, accomplishes the substantial results of Schillinger's invention, in substantially the way devised by him, and is within the patent as it stands after the disclaimer. The disclaimer took out of the first claim of the reissue only so much thereof as claimed a concrete pavement made of the plastic material laid in detached blocks, without interposing anything in the joints in the process of formation, leaving that claim to be one for such a pavement laid in detached blocks, when free joints are made between the blocks, by interposing permanently or temporarily between them, in the process of their formation, tar-paper or its equivalent.

In *California Paving Co.* v. *Schalicke*, (*supra*,) it was said, (p. 406:) "The evidence in the present case shows that the defendant, during the process of making his pavement, marked off its surface into squares. But the question is whether he, to any extent, divided it into blocks, so that the line of cracking was controlled, and induced to follow the joints of the divisions, rather than the body of the block, and so that a

block could be taken out, and a new one put in its place, without disturbing or injuring an adjoining block. The specification makes it essential that the pavement shall be so laid in sections 'that each section can be taken up and relaid without disturbing the adjoining sections.' Again it says that the joint between the blocks 'allows the several blocks to heave separately, from the effects of frost, or to be raised or removed separately, whenever occasion may arise, without injury to the adjacent blocks.' This is essential; and, in all the cases where infringement has been held to have been established, there have been blocks substantially separate, made so by the permanent or temporary interposition of a separating medium or a cutting instrument, so that one block could upheave or be removed without disturbing the adjoining blocks. The patentee, in the disclaimer, expressly disclaimed 'the forming of blocks from plastic material without interposing anything between their joints while in the process of formation.' It appears that the defendant laid his pavement in strips from the curb of the sidewalk inward to the fence, in one mass, and then marked the strip crosswise with a blunt marker, which is made an exhibit, to the depth of about one sixteenth of an inch. But it is not shown that this produced any such division into blocks as the patent speaks of, even in degree. There were no blocks produced, and, of course, there was nothing interposed between blocks. The mass underneath was solid, in both layers, laterally. So far as appears, what the defendant did was just what the patentee disclaimed. The marking was only for ornamentation, and produced no free joints between blocks, and the evidence as to the condition of the defendant's pavements after they were laid shows that they did not have the characteristic features above mentioned as belonging to the patented pavement."

In its decision in the present case, which was made before that in the Schalicke case, the court said that the case was in no way different, so far as infringement was concerned, from the cases against Perine and Molitor and the case against the Greenway Brewing Company.

In the Schalicke case, it was said, in the opinion of this

court, in regard to the pavement in the Molitor case: "The defendant's pavement was made by cutting a lower course into sections with a trowel, to a greater or less depth, according to the character of the material, making a joint, and doing the same with an upper course, the upper joint being directly over the lower joint. Into the open joint, in each case, was loosely put some of the partially set material from the top of the laid course, answering the purpose of tar-paper. A blunt and rounded joint-marker, which was said to be $\frac{1}{16}$ or $\frac{1}{8}$ of an inch in depth, was then run over the line of the joints, marking off the block. The pavement was weaker along the line of the joint than in any other place. This was held to be an infringement." It was also there said that, in the Greenway Brewing Company case, "it was held that the 2d claim of the reissue was infringed by a concrete pavement which had an open cut made by a trowel entirely through two courses of material, the line of cut in the upper course being directly over the line of cut in the lower course, and that the interposition of the trowel, though temporary, was an equivalent for the tar-paper, even though the joint was left open after the trowel was removed, and was not made tight."

In the present case, the only pavement for which the defendant was held liable was what was called in his account or statement before the master "concrete flag pavement," the manner of constructing which is thus described by Mr. Perkins, a witness for the plaintiff: "First, joists are placed seven to eight feet apart, in front of the property where the work is to be laid. First, one stone is formed by placing a joist across between the others at right angles, generally at about four feet from the place of beginning. In this space a mortar, composed of sand, gravel and cement, is put and thoroughly tamped, so that the coarse material will be from three to four inches in thickness, leaving about one half inch on top for a mortar composed of sand and cement, which is trowelled off and made even with the top surface of the joists. Then the short joist that is put in at right angles, as before described, is taken up and placed about the same distance as before, and again filled in. The finer material in the coarse concrete is generally

worked next to the joist, so as to make a good, smooth, strong edge. When the top stuff is put on this last stone, and finished over on top with a trowel, the joint between the two stones being marked on the outer joist, a trowel is drawn through the top stuff, to make a joint straight, to correspond with the joint below." The evidence is satisfactory, that the trowel was used to cut through or into the top layer to an extent sufficient to make such a separation of the top layer into blocks, at a line corresponding with the joint below between the sections of the first layer, as to control the cracking of the top layer, by dividing it substantially into separate blocks. This division depends on the depth of the cut. The defendant contends that the object and effect of the marking with the trowel was only to give to the pavement the appearance of flagging; but the evidence is entirely clear, that the cut was made sufficiently deep, in proportion to the thickness of the upper layer, to make such a separation of the upper layer into blocks as would compel any tendency to crack to follow the line of the cut made by the trowel, and not run off into the body of the layer; and that thus the object of Schillinger's invention was attained. The defendant is, by the report of the master and the decree of the Circuit Court, made liable only for concrete flagging so laid and cut as to produce such result. The defendant was particular to have the cut in the upper layer made with the trowel directly over the line between the two sections of the lower layer, and it is shown that the upper layer of his pavement thus made would come up in separate blocks. He made his lower course of sand, gravel and cement, mixed in the proportions of one part of cement to six or seven of sand and gravel, while he made his upper course of one half sand and one half cement, made plastic with water. The lower course of his flagging was composed of material in which there was only one part of cement or adhesive substance to six or seven parts of non-adhesive substance, and there was but a slight tendency to adhere between the faces of the two sections in the lower course; while as the upper layer was composed one half of adhesive substance, the tendency was for its material to adhere strongly. Therefore, a cut in the

upper course, coincident with the joint below, would permit any action of the settling of the lower course, through frost or upheaval, to extend to the top of the upper course through a joint cut in that course, of sufficient depth to prevent the tendency of the upper course to crack in its body rather than in the line of the cut.

We are, therefore, of opinion that the first claim of the reissue, as it stands after the disclaimer, is infringed, because the defendant's pavement is a concrete pavement, laid in detached blocks or sections, substantially in the manner shown and described in the specification of the reissue, the detached blocks in the upper course being the equivalent of the detached blocks or sections of the Schillinger pavement; and that the second claim of the reissue is infringed, because the temporary use of the trowel or cutting instrument, to divide the upper course into blocks, is the equivalent of the tar-paper of the Schillinger patent, the cutting making a division which controls the cracking, and facilitates the taking up and relaying of the blocks or sections in the upper course "without disturbing the adjoining sections," and the trowel being interposed to effect its object during the process of forming the pavement on the spot where it is to remain.

The invention of Schillinger was a very valuable one. The evidence is that it entirely superseded the prior practice of laying concrete pavements in a continuous, adhering mass.

The defendant introduced in evidence, on the question of novelty, the following patents:

English patent to Claridge, No. 7489, of 1837; English patent to D'Harcourt, No. 7991, of 1839; United States patent to Russ, No. 5475, of 1848; English patent to Chesneau, No. 350, of 1852; English patent to Coignet, No. 2659, of 1855; English patent to De la Haichois, No. 771, of 1856; and United States patent to Van Camp, No. 93,142, of July 27, 1869. All of these patents, except the Van Camp patent, were introduced in evidence on the part of the defence in the case against the Greenway Brewing Company, and it was held in that case that none of them anticipated the Schillinger invention. A copy of the record in that case, embracing the

pleadings, and the evidence and patents put in by the defend
ant in it, on the question of novelty, forms part of the record
in the present case.

An examination of the patents put in evidence by the de-
fendant, in connection with the testimony in regard to them,
shows that the Claridge pavement was not a concrete pave-
ment, and was not formed in detachable blocks, but was a con-
tinuous asphalt pavement; that the D'Harcourt pavement was
not a concrete pavement laid in detached blocks or sections,
nor could one section be removed without disturbing adjacent
sections; that the Russ patent shows a concrete foundation for
a stone pavement, the pavement proper being constructed of
granite or syenite placed on top of the concrete foundation,
such concrete foundation not being formed in detachable
blocks, but only being provided at certain places with remov-
able panels, consisting of frames filled with concrete, to be
lifted out to give access to water-pipes or for other purposes;
that the Chesneau pavement was not a concrete pavement laid
in detached sections or blocks, but was a continuous pavement,
provided with panels to give access in certain places to gas
and water-pipes, the panels being made of sections set in
frames, which were removably inserted in the surrounding
pavement, and there was no arrangement of tar-paper or its
equivalent between adjoining blocks of concrete, for the pur-
pose set forth in the Schillinger patent; that the Coignet
patent did not show a concrete pavement, made in detachable
blocks after the manner of Schillinger's, and built on the
ground where it was to remain; that the De la Haichois pave-
ment was not a concrete pavement laid in detachable blocks
or sections, or having the arrangement of tar-paper or its
equivalent between adjoining blocks of concrete, like that of
Schillinger; and that the Van Camp patent showed only blocks
formed in moulds, and removable from the moulds, or the
pavement to be laid cemented in the moulds, and it not being
stated that the blocks should be formed on the spot where
they were to remain, nor that they should be formed of cement
and gravel or sand. It further appears that, in the Van Camp
patent, when the blocks are made in moulds, they are like

bricks, or artificial stones, or wooden blocks, which are prepared and then brought to the place where they are to be laid and put down in the usual manner; and that, when the blocks remain in the moulds and are thus laid, they do not present a uniform wearing surface of concrete, or constitute a concrete pavement formed in detachable blocks by joints.

Other testimony as to prior public use was introduced in this case, taken from the record in the case of *Schillinger* v. *Phillip Best Brewing Co.*, in the Circuit Court for the Eastern District of Wisconsin, which testimony was also introduced in the case against the Greenway Brewing Company, having been taken in November, 1882. In the decision in the latter case, it was correctly said of that testimony: "So far as it refers to prior use in Germany, not shown in a patent or printed publication, it was duly objected to in this case and must be excluded. As to the cement malt floor which Row laid in Baltimore twenty-five years ago, he shows that it was not made in sections detachable by free joints. The testimony of Botzler as to a prior malt floor laid by him in Chicago is too indefinite to amount to sufficient evidence to defeat a patent." So far as that testimony related to a pavement used in Germany, it was objected to at the time it was introduced in this case, as incompetent. It was clearly inadmissible under § 4923 of the Revised Statutes, because it did not show anything that had been patented or described in a printed publication.

We do not think that the reissued patent, as it stood after the filing of the disclaimer, was open to the objection that it was not for the same invention as that of the original patent. Whatever there was of objectionable matter inserted in the specification or the first claim of the reissue, when it was granted, was removed by the disclaimer. The reissue was granted within ten months after the original. The single claim of the original patent was repeated in the reissue as the second claim of the latter, and the first claim of the reissue, as it stood after the disclaimer, did not expand beyond the claim of the original what was claimed in the reissue.

As to the amount of the decree, we think the court properly awarded the sum of four cents per square foot as the profits of

the defendant, and that it was right to give to the plaintiff the entire profits made by the defendant by the laying by him of his concrete flagging, in view of the testimony in the case. It clearly appears that the defendant's concrete flagging derived its entire value from the use of the plaintiff's invention, and that if it had not been laid in that way it would not have been laid at all.

In *Elizabeth* v. *Nicholson Pavement Co.*, 97 U. S. 126, 139, it is said that "when the entire profit of a business or undertaking results from the use of the invention, the patentee will be entitled to recover the entire profits, if he elects that remedy." This language was quoted with approval in *Root* v. *Railway Co.*, 105 U. S. 189, 203. As in the case of the Nicholson patent, so in the case of the Schillinger patent, the pavement was a complete combination in itself, differing from every other pavement, and the profit made by the defendant was a single profit derived from the construction of the pavement as an entirety. *Callahan* v. *Myers*, 128 U. S. 617, 665, 666.

Within the decision in *Garretson* v. *Clark*, 111 U. S. 120, the proof in this case is satisfactory, that the entire value of the defendant's pavement, as a marketable article, was properly and legally attributable to the invention of Schillinger.

The decree of the Circuit Court is

*Affirmed.*