### DAVEY TREE EXPERT CO. et al. v. EASTON.

(District Court, S. D. New York. January 15, 1920.)

No. 13–134.

1. **Patents ⬅328—890,967, for method of tree surgery, held invalid.**
   The Davey patent, No. 890,967, for a method of tree surgery *held* invalid and not infringed.

2. **Patents ⬅328—890,968, for method of tree surgery, infringed.**
   The Davey patent, No. 890,968, for a method of tree surgery, *held* infringed.

3. **Patents ⬅328—958,478, for method of reinforcing tree, held valid and infringed.**
   The Davey patent, No. 958,478, for method of reinforcing hollow trees, *held* valid, and claims 1, 5, and 8 infringed; claim 11 *held* not infringed.

In Equity. Suit by the Davey Tree Expert Company and others against Clifford H. Easton. Decree for complainants in part.

See, also, 283 Fed. 135.

George Cooper Dean, of New York City, and Clarence P. Byrnes and George F. Stebbin, both of Pittsburgh, Pa., for plaintiffs.

Kenyon & Kenyon, of New York City, for defendant.

ROSE, District Judge. The plaintiffs are the owners of letters patent Nos. 890,967, 890,968, and 958,478. The first two were issued

June 16, 1908, to James A., John, and Martin L. Davey and the last on May 17, 1910, to Wellington E. Davey. Infringement is charged of the third claim of 890,967, the third, fourth, sixth, and seventh of 890,968, and the first, second, third, fourth, fifth, eighth, and eleventh of 958,478.

## No. 890, 967.

[1] The only evidence offered was for the defendant. He satisfactorily established both invalidity and noninfringement.

## No. 890,968.

[2] Defendant concedes the validity of the claim sued on. He admits occasional acts of infringement. It is now shown that none of them took place later than about two years before the filing of the bill in this cause. He says he does not think the patent is useful, and he will never infringe again, and therefore no injunction should issue against him. He was formerly in plaintiff's employ, and there acquired all the practical knowledge of tree surgery he had when he went into business on his own account. He has followed plaintiff's patented methods as closely as he thought he had the right to do, and his judgment as to how far he might lawfully go has not always been accurate. I saw him and heard him testify. An injunction will do no harm and may be useful.

## No. 958,478.

[3] The serious contest is over the claims of No. 958,478 in suit, and especially over the broad first claim, which is for—

"an improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk; said process comprising a building up within the said cavity of a filling in sections one over another."

Solid fillings of concrete or other substances had been long in use. They sometimes worked well, but not infrequently they cracked badly enough to fall out, or to permit water to get into the interior of the tree. The patentee came to the conclusion that they broke because, being in one solid piece, they could not bend when the tree swayed or twisted in the wind. He thought much of the trouble could be avoided if the filling was constructed in parts, so that, when occasion was, each section could, to a slight degree, move independently of the other.

For the better attainment in practice of this end, he devised various subordinate details as to the shaping, separating, and supporting of these sections. Such of them as are here material concerned the contouring of the section surfaces facing one another, so as to permit of a slight lateral swaying or motion of one on the other, the insertion of layers of oiled or tar paper or similar substance between adjacent sections, so as to fill the double purpose of preventing the concrete of one from completely adhering to another, and of cushioning the sections when they were moving in the wind, and the passing of iron bolts through the cavity from one side of the tree to another before pouring the concrete, so that, when the latter set, it would be supported by the bolt, and not by the sections below it.

His methods have gone extensively into use and appear to have given satisfaction. The record carried back the date of his invention to the middle of October, 1907. There is nothing in the evidence to justify finding that any one had ever done the like before, although there have, of course, been many occasions in which, after the filling of the tree had been begun, an interruption had occurred before the job was finished. Sometimes, because the filling was too large, and consequently too heavy to be poured all at once into the weakened trunk of a tree, it was necessary to put in some of it, and let it harden sufficiently to sustain the weight of that which was to rest upon it. Weather, other calls, or any other number of accidents or incidents, frequently interrupted work before it was finished, and then, after a longer or shorter interval, it had to be taken up again. In other instances, the whole or part of a cavity had been filled with bricks or stones, upon or around which cement or mortar had been poured.

It is quite possible that some of these fillings may in a more or less imperfect degree have had some of the merits which Davey claimed for his. If so, it is not important. No one had sought them, and when, if ever, they were present, no one knew it. Such altogether accidental, unintended, and unrecognized uses do not anticipate.

Defendant insists, however, that claim 1 is so broad that it covers every filling built up of brick or stone, or even made of mortar or cement, in the pouring of which there has been an interruption. The plaintiffs answer that they are entitled to have the claim construed as limited by the specifications to a structure substantially as described and shown in the patent. They are doubtless right, but, even conceding so much, the question is a very close one. Since the case at bar has been heard, the Circuit Court of Appeals for the Third Circuit has, however, in the case of Davey Tree Expert Co. v. Van Billiard et al., 261 Fed. 996, answered it in favor of the plaintiffs. Substantially all the defenses here made were there set up. I do not feel justified in announcing a different conclusion. If this claim is valid, as I am constrained to hold that it is, the defendant has infringed.

All discussion as to the other claims sued on then becomes, from any practical standpoint, academic. Some of defendant's sections are contoured. Tar paper is always inserted between some part of their adjacent surfaces. He sometimes uses bolts, as they are shown in plaintiffs' patent. All this is not open to question, but he says that he neither intends nor desires contouring. When there is any of it, it is due solely to the fact that a mass of wet concrete tends to press forward and towards its center. He asserts that recently he covers with paper only one-third, or thereabouts, of the upper surface of a lower section. He argues that his bolts are inserted merely to draw the sides of the tree trunk together, and not to support the concrete. If all that he says on these points be accepted at their face value, it still remains true that the bolts do support the sections, that he uses paper to break up the fillings into sections, and that to some extent that paper serves as a cushion between the concrete surfaces above and below it, and that a contour does result from his adoption of plaintiffs' method of

not only building up his fillings in sections, but of maintaining, after the work is finished, at least a partial separation between them.

The record makes it plain that defendant has not always kept within the limits he now prescribes for himself. It follows that, with the exception of claim 11, all those of 958,478 here involved are valid and have been infringed.

Claim 11 had for one of its elements a compressible material between the sections. Tar paper to some extent may be compressible, but I think a reading of the specifications shows the patentee had in mind a substance other than tar paper, and different from any used by the defendant.