## DAVEY TREE EXPERT CO. v. McCARTHY.

(District Court, E. D. New York. August 11, 1922.)

1. Patents ⬡═229—Infringement of process for sectional filling of tree cavity cannot be avoided by letting filling break into sections after construction.

Infringement of a patent for an improved process of filling tree cavities with concrete, constructed in sections designed by reason of their shape and the compressible cushion between them to avoid cracking, cannot be avoided by using a one-piece filling, if slots or recesses therein are so extensive as to cause transverse breaks dividing the filling into sections, when the filling is subjected to strain.

2. Patents ⬡═317—Plaintiff entitled to injunction, when defendant's workmen have sometimes infringed patent.

Where it is admitted that, either through carelessness or disregard of plaintiff's rights, defendant's workmen, in filling cavities in trees with concrete, have sometimes infringed plaintiff's patent, covering a sectional filling, by inserting tar paper or other substances nearly or completely through the filling, plaintiff is entitled to an injunction.

3. Patents ⬡═328—958,478, for improvement in process of filling cavities in trees, held infringed.

The Davey patent, No. 958,478, for an improved process of filling cavities in trees with concrete constructed in sections, *held* infringed.

In Equity. Suit by the Davey Tree Expert Company against Jerome T. McCarthy, trading as the Standard Tree Preservation Company. Decree for plaintiff.

Bakewell & Byrnes, of Pittsburg, Pa., and George C. Dean, of New York City (George E. Stebbins, of Pittsburgh, Pa., and Irving Obrieght, of New York City, of counsel), for plaintiff.

Knight Bros., of New York City (Octavius Knight, of New York City, of counsel), for defendant.

CHATFIELD, District Judge. The plaintiff brings suit against the defendant for infringement of assigned patent No. 958,478, issued May 17, 1910, to one Wellington E. Davey, who had, for a number of years prior to that time, engaged in reinforcing trees; that is, filling the cavities in the trunks and branches of trees with cement, in order to strengthen the tree, prevent further decay, and remove the unsightly appearance. The ideas of cleaning out the cavity, preparing the interior surface, and strengthening the concrete by both lateral and longitudinal rods and wires or bolts, was well known in the prior art, and the patent in question does not claim any invention in these matters, many of which had been, according to the testimony, the result of Mr. Davey's own study and work.

The essential ideas of the Davey patent were improvements to prevent cracking in the concrete, to keep out water from the outside, and to protect the different parts of the filling by dividing it into sections. The patent has 17 claims, each of which is stated to be for "an improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk."

Claim 1 is broadly for the process of accomplishing the result by "building up within the cavity of a filling in sections one above another." Claims 2, 5, and 6 describe specifically contouring or curving of the upper surface of each section with a slope downward toward the outer edge for drainage, while claims 3 and 4 feature broadly the idea of supporting each section independently of those below it. Claims 8, 9, 10, 11, 12, 13, 14, 15, and 16 include the ideas of interposing some substance so as to form a cushion or compressible layer between the sections, the precise details of which need not be stated, while claim 17 suggests the idea of applying metal reinforcement to each section before filling in the concrete.

The defendant is alleged to infringe all of the claims. He formerly was in the employ of the plaintiff, and left in order to go into business for himself, in an attempt to put in practice certain ideas which in his opinion were improvements upon and different from the methods set forth in the patent just described. There is nothing in the case to indicate that the defendant has intended at any time to be a deliberate infringer of the patent in suit. The issues presented are (1) whether his method, if carried out properly, constitutes an infringement of the patent; and (2) whether he and his workmen have carried out in practice his ideas, or whether, through carelessness and the demands of a particular tree cavity, the methods of the plaintiff's patent have been employed.

The defendant in no way disputes the validity of the patent, and interposes noninfringement as his sole defense. The patent has been held valid in two different litigations. Davey Tree Expert Co. v. Easton, 283 Fed. 840, Rose, J., So. District of New York, Jan. 15, 1920; Davey Tree Expert Co. v. Van Billiard (C. C. A.) 261 Fed. 996. In the Easton Case it is apparent that the defendant substantially admitted infringement, following the patent as closely as possible, but seeking to excuse himself therefor. His principal defense was an attack upon the validity of claim 1 of the patent. The same propositions were presented in the Van Billiard Case, and again the validity of the patent presented the main issue in the case.

Like the defendant in the Easton Case, it is urged in the case at bar that the defendant in this action, in some of the evident infringements of this patent, was, through mere force of circumstances or accidental proportions of the concrete filling, compelled to insert the concrete in such places and shapes that breakage was a natural result and furnished no evidence of intentional infringement. It appears from the record that few fillings made by the defendant have been so situated that they could be examined. A concrete filling inside the trunk of a tree cannot be taken out without destruction of the tree, or serious trouble and damage. Those persons whose trees have been treated by the defendant have refused permission for such removal of the fillings. Only in three or four instances have the fillings been examined by both sides or produced in court. In fact, one of the serious issues in the case arises from the difference in testimony of the witnesses who have observed the defendant's fillings in place in trees, and who have drawn different conclusions from what they have observed.

The defendant's method consists in the use of monolithic fillings, but with reinforcements longitudinally through the filling and with crevices or slits transversely across the front of the filling and penetrating it for one-third to one-half of the depth. It is admitted that in some instances the workmen have been careless, and have inserted tar paper or other separating substances nearly through, or completely through, the filling. The defendant admits that, whether done through carelessness or deliberate disregard of plaintiff's rights on the part of the defendant's workmen, the charge of infringement is substantiated, and it was upon these apparent and admitted acts that a temporary injunction against the defendant and his workmen, restraining them from using the methods of the plaintiff's patent, was granted.

The defendant, as does the plaintiff, uses nails and wires inside his fillings, both as reinforcements and for the purpose of attaching the concrete filling more closely to the sides of the tree. In practice the defendant emphasizes his attempt to differentiate his method from those of plaintiff, by drawing tight with bolts the wood of the tree to the concrete filling, whereas the plaintiff, both in the form of bolt used and in his practice, seeks to fix each section in place, but, inasmuch as he is expecting a swaying of the tree trunk, and providing accommodations therefor, the tight union of the concrete and the tree is not deemed so essential, except at the outer edge of the opening, where a watertight joint is sought to be obtained. The defendant also uses certain metallic strips as watersheds, but these have no substantial bearing upon the question of infringement.

Both parties recognize the mechanical proposition that a force applied to one side of a rigid post or pillar produces tension on the side from which the force is applied, and compression on the opposite side, and that in the center of the post the strain is neutral. The defendant endeavors to produce a homogeneous pillar by the close union of the concrete and the wood, with the idea that the strain at the center (somewhere in the concrete) and the resultant swaying will be slight. The defendant, in order to afford compensation for the greater strain and motion at the surface, inserts the transverse grooves or apertures, and naturally causes these to slope upward from the outer surface, in order to prevent the entry of water and moisture.

The plaintiff, on the other hand, bases his patent and his practice upon the statements, shown in the testimony, that the wood and the concrete never make a homogeneous pillar, and that monolithic fillings break in nearly every instance, either entirely through the concrete, or around the edges. It relies upon the possibility of movement between the sections of his fillings, even seeking to facilitate such movement by contouring the adjoining surfaces of these sections, and using compressible material between them to avoid breaking and destruction of the filling.

Considerable testimony was taken in an attempt to show that the defendant had purposely lost one of the few fillings put in by him, and removed for inspection after a break had been observed. As a matter of fact, this particular filling was in a branch, and the defendant was particularly interested in preserving the exhibit, if the filling was not

broken; while, if broken, it would have but little probative effect on the question of how such fillings would withstand the strain, when placed in the trunk of the tree. There is no reason, therefore, to suppose that the defendant intentionally lost the exhibit, nor to conclude, from the testimony as to this exhibit, that the McCarthy method in trunk fillings will withstand the effect of wind pressure.

The most damaging piece of evidence against the defendant's contention is the testimony that in one tree, containing some 16 transverse separations at the opening, at least 6 of these openings show the flow of wood flux, a slime admittedly coming from the heart of the tree, and which could not be reasonably expected to appear on .the outer surface, if the monolithic character of the structure had been preserved throughout its entire length. But even this filling has not been removed. The testimony would indicate only that in this particular instance the defendant's workmen may have been careless, or the surface openings may have been carried so far back that the monolithic character of the filling was lost.

[1] As was said in the Van Billiard Case, surface grooves or markings would constitute an infringement of the Davey patent, if carried far enough through the concrete, so as to make the monolithic portion breakable when subjected to any strain, and therefore only a subterfuge against the charge of infringement. As was said in the cases of Schillinger v. Gunther, Fed. Cas. No. 12,456 and Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011, with reference to the separation of portions of concrete sidewalk or pavement, a charge of infringement cannot be avoided by making the dividing crevice so shallow, or only partially through the stone, that the parts will not divide until subjected to strain. The purpose of making the divisions is to provide for the effect of strains or upheavals, and to insure against cracking across the divisions or grooves. To provide that the stone would crack at the location of the groove when subjected to strain, and thereafter remain in two parts, would, so far as practical purposes and practicability are concerned, present the same idea as if the two parts were constructed entirely separate when the concrete was put in position.

The plaintiff and defendant are business competitors. Whether the defendant can show, as a matter of competition, that a monolithic filling can be made sufficiently durable and attractive to hold the business of his customers has no bearing upon the result of this action. Whether the plaintiff can show that no monolithic filling is satisfactory is also aside from the question. The amount of damage suffered by the plaintiff from the few cases in which the defendant has been shown to have, either at the upper portion of fillings or in small fillings, and by careless work, infringed the plaintiff's rights, is almost negligible.

[2] But, as was decided on the application for preliminary injunction, the defendant must avoid infringement. An injunction against him to prevent carelessness on the part of his employees is necessary and proper under the circumstances. The defendant obtained a patent, issued to him on the 27th day of October, 1920, under No. 419,818, covering his methods. Many of the claims in this patent have to do

with methods of waterproofing and protecting the edges of the filling. This patent, therefore, relates more closely to the subject-matter of Davey patent, No. 890,968, than to the claims of the patent in suit; but, in so far as the claims describe a method of constructing the exterior surface of the filling with transverse slots, it is evident that these slots or recesses cannot be made so extensive as to serve the purpose of weakening the monolithic part of the filling, in order to, or in fact to, cause transverse breaks which will thus divide the filling into sections. No definite finding as to the extent or depth to which such recesses can be carried can be made upon the testimony in this case. The defendant seems to have in practice carried the matter at least to the line of danger of infringement. All of the claims are involved in the issue and seemingly infringed.

[3] As has been said, proving of profits or damages is substantially an immaterial issue; but the evidence of infringement is sufficient, so that the plaintiff would seem to be entitled to injunctive relief specifically requiring the defendant to refrain from the construction of monolithic fillings which will in practice break into sections, and if he does not obey this injunction he will be held liable both in damages and for disobedience of the decree.