## HOLLAND CO. v. AMERICAN STEEL FOUNDRIES.

### No. 49 C 948.

United States District Court
N. D. Illinois, E. D.

Nov. 8, 1950.

Casper W. Ooms, L. B. Mann, Chicago, Ill., for plaintiff.

Haight, Goldstein & Haight, Orrin O. B. Garner, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is a suit under the patent laws of the United States for infringement of Claim 10 of United States Letters Patent No. 2,053,989, granted on the application of E. G. Goodwin. It is conceded by defendant that plaintiff is now the owner of said patent and is entitled to sue for infringement thereof.

The subject matter of the patent in suit is railway car trucks or undercarriages, and more particularly the usual freight car type of truck. The controversy here relates to means provided to absorb the energy of oscillating truck springs and dampen their vibrations, and thus to reduce the destructive bouncing and swaying of freight cars. The complaint alleges that the defendant has been, and still is, infringing the patent by making, selling and using railroad car trucks—called "Ride-Control Trucks (A-3)"—embodying the patented invention, and licensing others to do so. In its answer, defendant denies infringement and the validity of the patent, and further asserts that plaintiff has been guilty of laches in commencing its action. Issue having been joined, a trial of the cause was had upon the merits, after which the Court took the matter under advisement upon the briefs of the parties.

The Goodwin patent contains three stated objects: (1) To provide means to absorb energy caused by the vertical oscillation of the parts supported by the truck springs so as to minimize, or eliminate rocking of the car in service; (2) To absorb energy both while the spring is being compressed and during the recoil; (3) To attain the first two objects in an inexpensive way. Claim 10 states, "In a car truck, a side frame, a bolster, springs on said side frame for supporting said bolster, friction means on said side frame, friction shoes engageable with said means, and wedging means on said bolster comprising spaced, oppositely sloping bolster walls for urging said shoes against said friction means to dampen vibrations of said springs".

The operation of plaintiff's device in its first embodiment as indicated in Figs.

1 and 2 may be described in the following manner: As a load is imposed on the truck, there is a resultant cushioning in the truck springs; as the truck springs are compressed downward through the imposition of a load from the bottom or the top, the bolster has a tendency to move downward on the cushioning truck springs; as the bolster commences to move downward it bears solely on the friction shoes through the medium of sloping bolster walls on each side; due to the resistance of the truck springs, there is then set up a force between the motion of the bolster downward and the resistance to it upward from the truck springs, and by virtue of the sloping bolster walls the shoes are forced outwardly until they come into engagement with the friction plate on the side frame; that friction resistance will retard the movement of the bolster downward and upward and thereby destroy the possibility of resonance being built up in the truck springs. The second embodiment of plaintiff's device, as illustrated in Figs. 3 and 4, is essentially the same as the preceding one, except that instead of a flat spring plate to deliver the truck spring load to the shoes, an additional member is interposed, i.e., a spring cap which has an angular surface corresponding in degree of angularity to that on the bottom of the bolster. A third embodiment is illustrated in Figure 8 of the patent. The function of the device is, for all practical purposes, identical with that previously described except that there has been added a horizontal coil spring which tends to urge the friction means on the side frame against the face of the friction shoe.

There are two embodiments of the accused devices, the first of which may be described as follows: As a load is imposed on the bolster, the bolster moves downward, compressing the load-carrying or bolster-supporting springs; in order to eliminate resonance occurring in the truck springs, friction is introduced between the bolster and the side frame by means of friction shoes; the friction shoes are mounted within the bolster; an independent spring furnishes the force which provides the friction pressure between the bolster and the friction plate on the side frame; that independent spring is mounted within the bolster and bears, at one end, on the under side of the top member of the bolster and, at the other end, at the bottom of the shoe pocket within the friction shoe itself; on each side of the friction shoe there are angular surfaces which bear on the corresponding angular surfaces of the bolster; the force of the independent spring pulls the shoe along the angular surfaces until it engages the friction plate on the side frame. Through the operation of the independent spring there is furnished a constant pressure to provide friction for the purpose of retarding synchronous resonance being built up in the truck springs. In other words, the friction remains the same, regardless of the load imposed upon the truck springs. In the other embodiment of the accused devices, the action is essentially identical with that of the first. The only alteration is that there is a reversal of the position of the friction shoe with respect to the bolster, so that one end of the independent spring bears on the top inside surface of the bottom member of the bolster, and the other end again bears on the bottom of the shoe pocket; the friction shoe is thereby drawn upward against the angular bolster surfaces and thereby forcing the shoe outward against the friction plate on the side frame. As in the first embodiment, there is a constant pressure to produce friction retardation of the truck spring group.

It seems clear from the evidence and from a review of the file wrapper of the patent in suit and of Shafer Patent No. 2,073,075, that Claim 10 originated in the Shafer application and found its way into the Goodwin patent via interference proceedings in the Patent Office. The drawings of the Goodwin patent reveal that there are actually two separate classes of devices. Class One, as illustrated in the previously-described Figures 1, 2, 3, 4, and 8, includes those devices in which the truck load carrying springs are employed to operate and urge the shoes, associated with the bolster, against the friction means or plates on the side frame columns. Class Two, as illustrated in

Figures 5, 6 and 7, includes those in which the friction shoes associated with the bolster are directly pressed against the friction means or plates on the side frame columns by springs independent of the load carrying coils, thereby producing practically constant pressure.

Claim 10 of the patent in suit clearly relates only to Class One devices. This is confirmed by the fact that Claim 10 originated in the Shafer application which in its entirety was limited to Class One devices. Class Two devices were eliminated from the Goodwin patent by the applicant, upon the suggestion of the examiner of patents, during the pendency of the application. The Goodwin file wrapper (Defendant's Exhibit 34) is uncontroverted evidence of this fact. At the time, no mention was made either by the examiner or the applicant as to the removal of Figures 5, 6 and 7 from the application. However, that appears to have been an oversight since these figures clearly relate to the material then withdrawn by the applicant, i.e., Class Two devices.

It therefore seems clear that Claim 10 of the patent in suit applies solely to Class One devices as illustrated in Figures 1, 2, 3, 4, and 8 of the patent. Defendant's accused devices each contain inside independent springs, activating the shoes against the sides to generate friction, and thus clearly do not infringe Claim 10 in suit. Claim 10 falls within Class One where the friction generated is directly proportional to the load. Defendant's accused devices would come within the category of Class Two, where the friction is at least in part generated by independent springs working against the shoes and sides of the devices. Since Claim 10 cannot be construed to include devices of the Class Two type, clearly the defendant's accused devices do not infringe the claim in suit. In other words, in order to establish infringement there must be identity of means, operation and result. Here, there is no identity of means and operation and, consequently, plaintiff's attempt to show infringement must fail.

Having arrived at this conclusion, it is unnecessary to pass upon the validity of Claim 10 of the patent in suit. I might observe in passing, however, that Claim 10 seems to be clearly anticipated in the prior art, particularly by Ritter No. 972,921. The stated object of the Ritter invention was "to temper and control the excessive oscillation of the bolster springs by the frictional action of the bolster guide members upon the side frames". Ritter also states that "the central wedge element may be inverted and either integral with or independent of the bolster, in which event the bolster springs will bear upon the bolster guide members". The inverted form of Ritter's invention closely resembles the structure shown in the Goodwin patent No. 2,053,989. In particular, it should be pointed out that the bolster guide members of the Ritter structure function as the friction shoes defined by Claim 10 of the patent in suit.

Plaintiff, contends, with considerable persuasion, that Ritter teaches an inoperable device, pointing out that there is no instance of the Ritter patent ever having been used. Certainly it never appeared in the truck of any railroad car. It would seem, however, that Goodwin has merely perfected a practical application of what Ritter teaches, and thus his patent represents an improvement in the art by a mechanic skilled in the art, but does not constitute invention. This might also be said of the defendant's two patents which they have secured on their accused devices herein. Since, however, I find that there is no infringement, it is unnecessary to make conclusive findings on validity.

Further, I find that there is no merit to the defendant's alleged defense of laches. There is ample evidence that plaintiff was in frequent communication with defendant concerning the asserted infringement from 1944—the year defendant made public its devices—until the present action was commenced in 1949. It seems clear that, during this entire period, plaintiff was honestly endeavoring to effect an amicable settlement of the dispute and

avoid litigation. Certainly, such activity is not incompatible with proper diligence to protect one's patent interests.

Judgment in favor of defendant. Plaintiff's costs.