## HOLLAND CO. v. AMERICAN STEEL FOUNDRIES.

### No. 10548.

United States Court of Appeals, Seventh Circuit.

April 29, 1952.

Rehearing Denied June 9, 1952.

L. B. Mann, Casper W. Ooms, Chicago, Ill., for appellant.

George I. Haight, Edward A. Haight, Orrin O. B. Garner, John W. Hofeldt, and Walter L. Schlegel, Jr., all of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff instituted this suit, charging defendant with infringement of Claim 10, Patent No. 2,053,989, issued to E. G. Goodwin September 8, 1936. Defendant by answer asserted invalidity and non-infringe-

ment. The District Court, [95 F.Supp. 273, 275] sustained the latter defense but failed to pass upon the issue of validity, although making the observation "that Claim 10 seems to be clearly anticipated in the prior art, particularly by Ritter No. 972,921." On appeal, this court reversed the holding of non-infringement and remanded, with directions to the District Court "to make appropriate findings upon the issue of validity." Holland Co. v. American Steel Foundries, 7 Cir., 190 F.2d 37, 39. On remand, that court in a memorandum opinion which included its findings of fact and conclusions of law found that the claim in suit was anticipated by prior art patents and was, therefore, invalid. Relative thereto, the court stated "that Goodwin merely perfected a practical application of what others have taught, and thus his patent represents an improvement by a mechanic skilled in the art, but does not constitute invention." [101 F.Supp. 388, 389.]

Upon such findings and conclusions of law, the judgment was entered from which this appeal comes. Obviously, under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., this court is not at liberty to set aside the findings as made unless "clearly erroneous." Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 336 U.S. 271, 274, 69 S.Ct. 535, 93 L. Ed. 672. See also Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097.

Goodwin assigned a number of patents, including the one in suit and five others issued to him relating to the same general subject matter, to Standard Coupler Company, which in turn assigned such patents to the plaintiff. Standard Car Truck Company commenced the manufacture of its "Barber Stabilized Truck," which it is asserted embodies the disclosure of the patent in suit. A controversy between plaintiff and Standard Car Truck Company culminated in the procurement by the latter of an exclusive license (later changed to non-exclusive), which included all of the Goodwin patents, and by which Standard Car Truck Company was permitted to continue the manufacture of its "Barber Stabilized Truck." Sometime later defendant

commenced the manufacture and sale of trucks (called "Ride-Control" trucks), which it is asserted embody the teachings of the patent in suit and the disclosure of the "Barber Stabilized Truck," manufactured by Standard Car Truck Company under license from the plaintiff. Obviously, we need not presently be concerned with defendant's accused truck inasmuch as we have previously held it to be an infringement.

The patent in suit is entitled "Bolster Damper," and relates to railroad car trucks and particularly those used in connection with freight cars. The purpose of the invention, as disclosed by its specifications, is stated in some detail in our previous opinion and it appears unnecessary to reiterate what was there said. Claim 10 in suit is also set forth in that opinion, 190 F.2d at page 38, and need not be repeated here. However, supplementary to what has been previously said, we quote from the opinion of the District Court as follows:

"The subject matter of the patent in suit is railway car trucks or undercarriages, and, more particularly, the usual freight car type of truck. The controversy relates to means provided to absorb the energy of oscillating truck springs and dampen their vibrations, and thus to reduce the destructive bouncing and swaying of freight cars. The Goodwin patent contains three stated objects: (1) To provide means to absorb energy caused by the vertical oscillation of the parts supported by the truck springs so as to minimize, or eliminate rocking of the cars in service; (2) To absorb energy both while the spring is being compressed and during the recoil; (3) To attain the first two objects in an inexpensive way."

The District Court, in support of his finding of invalidity, relies upon and discusses in some detail four prior art patents, viz., Barrows No. 1,842,307, issued January 19, 1932, entitled "Railway Truck"; Ritter No. 972,921, issued October 18, 1910, entitled "Car Truck"; Otis No. 730,688, issued June 9, 1903, entitled "Bolster and Truck Mechanism for Vehicles," and Schei-

bli No. 1,452,529, issued April 24, 1923, entitled "Car Truck." Plaintiff fails to make any detailed criticism of the court's analysis of the disclosure contained in these prior art patents or that of the patent in suit but poses the question as to whether the court was justified "in substituting his notion" as to the prior art and mechanical skill, contrary to what is asserted to be the plain teaching of the documentary history. We are convinced that the District Court did a credible job in his analysis of these prior art disclosures and that their application to the claim in suit justified his finding of invalidity. In any event, we are in no position to say that it was "clearly erroneous."

We shall first consider the Ritter patent because we think, as was testified to at the hearing, that it is the most pertinent prior art disclosure. As to this patent, the District Court stated:

"Ritter discloses a truck wherein the bolster is supported by vertical springs which operate the friction shoes by forcing them against spaced, oppositely sloping bolster walls and against the side frame columns. According to Ritter, his bolster guiding means are, 'of such character, construction and arrangement that the side frames and bolster of the truck are maintained in their proper relation with respect to each other by the imposition, of the load upon the bolster, * * * and * * * to temper and control the excessive oscillation of the bolster springs by the frictional action of the bolster guide members upon the side frames'. And further, 'the oscillations of the bolster springs are reduced in number and amplitude by reason of frictional control'. Figure 1 of Ritter illustrates an arrangement wherein the wedge incorporates a spring seat seated upon the load supporting springs. Friction shoes, serving as bolster guide members, have wedge engagement with opposite faces or walls of the wedge and frictionally cooperate with friction walls in the adjacent side frame columns."

Defendant's exhibit 10 shows an enlarged drawing of Figure 1 of Ritter, the correctness of which is not disputed. In this figure is shown friction shoes formed outwardly by a wedge carried by a spring seat or cap. Downward pressure of the bolster on the shoes, resisted by the reaction of the springs transmitted through the wedge, forces the shoes outward. Claim 10 in suit was allowed, after amendment limiting the invention to "sloping bolster walls." It is argued that this limitation distinguishes the claim from the disclosure of Ritter. However, Ritter in his specifications stated, " * * * the central wedge element may be inverted, and either integral with or independent of the bolster, in which event the bolster springs will bear upon the bolster guide members." The "sloping bolster walls" as suggested by Goodwin in the patent in suit would result from the inversion of the wedge element as suggested by Ritter.

Defendant's exhibit 11 also shows an enlarged drawing of Ritter (the same as exhibit 10), except it is altered or modified by inverting the wedge to obtain "sloping bolster walls," as suggested by Ritter in his specifications. As modified, defendant's exhibit 11 discloses every element called for by the claim in suit, namely, (1) a side frame, (2) a bolster, (3) springs on said frame for supporting said bolster, (4) friction means on said side frame, (5) friction shoes engageable with said means, and (6) wedging means on said bolster comprising spaced, oppositely sloping bolster walls for urging said shoes against said friction means to dampen vibrations of said springs. In other words, the elements disclosed by Ritter read literally upon claim 10 of Goodwin. The exhibits referred to so show and defendant's expert witness so testified.

Plaintiff portrays a glowing picture of the contribution made by Goodwin to the solution of a problem which no doubt had long confronted the railroad industry. Assuming, however, that Goodwin made a contribution, it is not discernible from this record what, if any, part thereof is properly attributable to the patent in suit. As already shown, plaintiff became the assignee of this and numerous other Goodwin pat-

ents and licensed their use to Standard Car Truck Company, engaged in the manufacture of the "Barber Stabilized Truck." Defendant is asserted to have embodied the features of this truck in its accused structure. Again, there is nothing to show to what extent, if any, the teachings of the patent in suit were incorporated in or utilized by Standard Car Truck Company in its "Barber Stabilized Truck." As shown, its relationship with plaintiff was fixed by a license which covered a number of Goodwin patents, and while there is evidence that it utilized the teachings of Goodwin, it appears that it was of a Goodwin patent other than that relied upon in the instant case. It is not very helpful to plaintiff's cause to talk generally about Goodwin's teachings or his notable contribution to the art. After all, the status of the patent in suit must be determined by its disclosure, independent of what is shown by the patentee in some other patent or patents.

Plaintiff points to the fact that Ritter had never been put to use and that it had expired prior to the issuance of the patent in suit. In other words, it was a paper patent, the teachings of which had not been embodied in a structural device either by the defendant or anybody else and that, therefore, defendant should not be permitted to rely upon it for the purpose of anticipating Goodwin. This argument generally carries some force but as related to the instant case will not bear close scrutiny. In the first place, it is doubtful from the record that the disclosure of the patent in suit has ever been put to use and certainly not by the plaintiff. And, as shown, if it has been utilized, it appears to have been in connection with other patent disclosures, without any definite showing as to what part, if any, the teachings of the patent in suit contributed to the art. Moreover, it has been held that a patent, even though never put to use, may be relied upon to invalidate a subsequent patent. Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 147 F.2d 345, 350.

We think that the patent in suit is invalid in view of Ritter. We agree with the District Court that any improvement

shown was such as to come within the domain of the skilled mechanic. As the previous opinion of this court shows, defendant's accused structure embodied an improvement over the Goodwin patent in suit but, notwithstanding, this court found infringement because it was a "difference only in degree." And as defendant's improvement was not such as to permit it to escape infringement, any improvement by Goodwin was not such as to permit it to escape anticipation by Ritter. We find no occasion to discuss other prior art patents relied upon by the District Court.

The judgment appealed from is Affirmed.