## GUIBERSON CORP. v. GARRETT OIL TOOLS, Inc.

### No. 14358.

United States Court of Appeals Fifth Circuit.

June 30, 1953.

Rehearing Denied Aug. 7, 1953.

---

S. Austin Wier and Howard E. Moore, Dallas, Tex., for appellant.

James B. Simms, Houston, Tex. (W. E. Dyche, Jr., Houston, Tex., J. Byron Saunders, Tyler, Tex., Browning & Simms, Houston, Tex., of counsel), for plaintiff-appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for infringement of Letters Patent No. 2,519,242, issued to Garrett and Peters for a pressure responsive valve.

The claim was that the valve presented a new combination [1] of great utility in controlling the flow of gas into a well tubing thousands of feet below ground surface to stimulate the production of oil from the well, and that defendant had infringed and was continuing to infringe the plaintiff's patent.

The defenses were: (1) that the patent was invalid because of anticipation; (2) there was prior knowledge, prior publication, prior use or prior sales; (3) no construction called for in any claim of the patent presented a patentable claim in view of the prior art; (4) there was no infringement of the combination; (5) the claims were too indefinite.

At a pretrial hearing it was admitted that plaintiff owned the legal title to the patent and by order the trial was limited to the issues [2] therein set out.

---

1. The Patentees, speaking of old and well-known art, say in their patent specification (Col. 1, begining with line 11):

"A customary method of raising well liquid to the surface has been to use bellows-type pressure responsive valves for introduction of a lifting gas into the liquid column within pipe strings of well bores. However, a great deal of difficulty has been encountered due to bellows failure caused by excessive pressure to which the bellows are subjected * * *".

The patent specification further says (Col. 1, beginning with line 34):

"Heretofore attempts have been made in valves of this type to provide a housing for the bellows which is sealed off from the pressure exterior of the device when excessive pressures are encountered * * *. This does not always work entirely satisfactorily. One of the principal causes for failure of the valve means to seal off the bellows housing is the presence of foreign matter upon the seat of valve member * * *."

2. (a) The question of infringement by the defendant.

(b) The question of validity of the patent in suit in view of the following defenses—

(1) Lack of invention in view of the prior art.

(2) Prior invention by others.

(3) Prior publication.

(4) Prior use and sale.

(5) Prior knowledge by others.

(c) The question of whether the claims of the patent in suit are sufficiently def-

Heard to the court on full evidence, oral and written, the latter of which included the prior patents claimed as anticipation, and the evidence all in, the defendant argued vigorously that the patents referred to and cited by it had anticipated every element of each claim in the patent and the combination itself.

Of the many patents cited, defendant relied on the Winkler patent, No. 2,469,038, generally, on the Grisham invention and Patent, No. 2,236,137, as anticipating claims 1, 2, 3, 4, 5, 7, and 8, and on the patents to Jones and to Ashton as anticipating the alleged inventive conception of the patent in suit.

These last two patents and Winkler's were also relied on as anticipating claims 7, 8, and 9 of the patent in suit, calling for means tending to shift the bellows.

Basing its argument upon these patents, as anticipating, and upon the general claim that the patent in suit is a combination patent in a well developed art and fails to meet the high standard of invention required of such patents, defendant, citing Butex Gas Co. v. Southern Steel Co., 5 Cir., 123 F.2d 954; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Ritchie v. Lewis-Browning Mfg. Co., 5 Cir., 196 F.2d 434; and Otis Pressure Control v. Guiberson Corp., 5 Cir., 108 F.2d 930; pressed hard upon the court these attacks upon the patent. Calling particular attention to its contention that the most pertinent prior art had not been cited to, or considered in, the patent office, defendant insisted that the

patent in suit was not entitled to the presumption of validity which would ordinarily arise from the grant.

Plaintiff admitted that its patent was a combination patent, all of the elements in which were old. Vigorously denying though the defendant's contention that the combination was a mere aggregation of these elements, the result not the product of the combination, but the mere aggregation of several results, it insisted that the patent describes and claims a new combination of elements producing new and advantageous results not theretofore achieved in the gas lift valve art. It insisted in short that this bringing together of old elements was clearly patentable "because it produced by their joint action a novel or useful result or an old result in a more advantageous way; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196, that, indeed, it filled a long felt and unsupplied want in a novel manner not only insuring for it great commercial success but evidencing real invention."

The district judge, after carefully canvassing all the patents and weighing all the evidence, rejected defendant's attacks upon the patent in suit. Finding that, though it was a combination patent, it represented a new and useful invention and was entitled to protection, and that defendant had infringed it, he concluded that plaintiff should have its decree.

While the findings of fact are too many and too long to be set out in full, the substance of the principal ones are copied below.[3]

inite as to satisfy the requirements of Title 35, Sec. 33, U.S.Code.

(d) The question of notice to defendant of infringement.

3. "4. Defendant has, between Aug. 15, 1950 and Nov. 3, 1950, sold within the Eastern District of Texas valves as depicted in Plaintiff's Exhibits 57 and 60 and being the same valves known as defendant's Type 'A' valve."

"7. The invention relates to the gas lift production of oil where gas is introduced into the well casing at the ground surface and is conveyed to the interior of the flow tubing of the well through which the oil is produced through valves which are mounted upon

the well tubing at different levels below the ground surface. The lowermost valve usually will be near the bottom of the well. The installation of such valves are made upon the tubing lengths as the tubing is made up and lowered into the well. During such installation, the valves are subjected to a pressure, the magnitude of which is dependent upon the height of liquid column within the well above each such valve and the density of such liquid. The valve locations are usually several thousand feet below the ground surface, and failure of a single valve of the installation results in a time-consuming expensive reinstallation of the valves and actually entails in many instances a

Based on these findings, the district judge concluded that the Garrett patent was valid and that it had been infringed and gave judgment accordingly.

danger of losing the productive capacity of the well so that as a practical matter the valves must have a substantial percentage of reliability in order for them to enjoy substantial acceptance by the industry."

"8. Repeated efforts were made in the gas lift industry over a period of nineteen years before the advent of the Garrett et al invention to utilize a flexible element charged with gas under pressure as the control for a gas lift valve as evidenced by the patents to Archer 1.687,317; Grisham 2,236,137; King 2,339,487; and Peters 2,342,301, but these valves, where usable at all, had application only in low liquid level wells because the high pressures found with high liquid levels damaged the flexible control elements of the valves."

"9. Attempts to protect the flexible control elements from damage due to high pressures were made by Archer * * *. These patents show the recognition of the problem by the industry since the filing by Archer of his application for patent in 1927, but these prior attempts failed to solve it."

"10. Of these early attempts, there is no evidence of substantial commercial acceptance except as to the King patent. The King valve demonstrated to the industry the utility and advantages of a dome sealed off by a bellows and charged with gas under pressure as the control for gas lift valves in the limited well installations where it could be used. With the King valve, it was possible to maintain accurate remote control of opening and closing of the valve from the ground surface by varying the pressure within the well casing."

"11. The King valve worked satisfactorily in low liquid level wells, but in high liquid level wells, debris frequently lodged between the seal elements 91 and 92 preventing a seal from being formed therebetween. King's attempted bellows protection proved so unreliable in practice, because of debris getting between the seal elements, that as a practical matter the valve was relegated by the industry to use only in low liquid level wells where the pressures to be encountered did not materially exceed the pressure charge of the valve dome."

"12. The first successful solution to the problem confronting the industry, as shown by findings 7 et seq. above, is found in the Garrett et al patent."

"13. It was a novel concept on the part of Garrett and Peters to provide in a gas lift valve the combination of elements including a pressure chamber sealed off by a bellows to provide a pressure dome charged with high pressure gas and a liquid filled section adjacent the bellows with an apertured partition between the pressure dome and bellows capable of being sealed off, thus protecting the bellows against high pressures with the valve still controlled by the segregated gas."

"14. These elements of the control assembly in the Garrett et al patent are all sealed off from the well fluids and function cooperatively to produce a new result, namely, the solution of the above mentioned long existent problem. The gas pressure produces a force which is transmitted by the liquid to the bellows urging its flexure in a direction to seat the valve when the valve is in any but full open position. When the valve moves to full open position, the element carried by the bellows seals the partition aperture to physically segregate the bellows from the gas under pressure, but the isolated gas still provides a force acting on the bellows in a direction to close the valve should the well casing pressure drop to approximately the magnitude of the charge of the gas in the pressure dome. Therefore, the segregation of the gas is physical only and not functional from the standpoint of controlling closing of the valve. This segregation of the gas simultaneously traps an incompressible backing of liquid to protect the bellows by equalizing the pressure across it regardless of the magnitude of the well pressure."

"15. It is this new combination of control assembly parts with the new cooperative functions of the elements in the assembly which provides the solution to the problem developed above, and which provides the new element having control for gas lift valves to all oil producing wells regardless of well depth or the height of liquid level within the well."

"17. In the valve defined by the claims of the patent in suit, not only do the elements of the combination function collectively and cooperatively to solve the long existent problem and thereby produce a new result, but the function of the individual elements is different than their function when found in other combinations of the prior art. For example, in claims 6, 9, 10, 11, 12, and 13, the liquid plays a duel role of transmitting the control force of the charge of gas in the pressure dome to the bellows, and, also,

Appealing from that judgment, defendant is here re-arguing all the matters argued below and insisting that the findings are clearly erroneous and must be set aside and the judgment reversed. We do not think so.

■ On the contrary, we think the district judge correctly apprehended the evidence and its effect, and as correctly found the facts established thereby. It will serve no useful purpose to discuss the authorities each cites. There is no real difference of opinion between the parties as to the controlling legal principles. The dispute arises on their application to the facts. The decision of the case, in short, turns on the facts as testified to and found. We cannot agree that the findings are clearly erroneous. On the contrary we think that they are almost, if not quite, demanded by the evidence.

■ Appellant correctly states that commercial success cannot take the place of invention, but it is equally true that such success may be evidence in support of one element of patentability that the claimed invention is useful. Appellant correctly states, too, that one who claims a patent on a combination of elements, all of which are old, has a heavy burden to show that there is something more to his patent than their mere assembling, their mere aggregating, each to perform its own function, the combination as a whole performing no new function, effecting no new result. Cf. Butex Gas Co. v. Southern Steel Co., 5 Cir.,

when the liquid portion is trapped to provide the incompressible backing for the bellows, it plays the additional function of keeping the pressures on both sides of the bellows nearly equal to protect it against distortion. Both of these functions of the liquid are essential to completely solve the problem met by the valve. In all the claims, the apertured partition functions in combination with the element carried by the moveable end of the bellows to physically segregate the pressure dome from the bellows at selected times without interrupting the function of the gas under pressure of providing the control force for closing the valve even with the aperture sealed off."

"20. Valves constructed in accordance with the Garrett et al patent (known as Garrett Type '0' valves) achieved immediate commercial acceptance upon their appearances in the industry in May of 1946, with 21,812 valves having been sold by Plaintiff through April of 1952, with a dollar value of $3,336,427.00. The valves have been installed in wells deeper than 10,000 feet filled with 18 lb. mud, demonstrating the usefulness of the valves under all well conditions. The commercial adoption of the valves has been universal throughout the principal oil fields of the United States, Canada, Venezuela, Mexico and Colombia."

"21. Of the prior art patents relied upon by the Defendant, no single reference shows or teaches the combination of elements of claims 9 and 11 of the Garrett et al patent, and no single prior art reference teaches the solution of the problem which confronted the industry from 1927 to 1946."

"22. Specifically the use of a pressure charged dome for a pressure responsive control for a valve in direct contact in combination with a liquid with provision made for physically segregating the bellows upon its flexure in one direction a predetermined amount so as to substantially equalize the pressures upon both sides of the bellows regardless of the magnitude of the well pressure is not found in any single prior art reference, either from the standpoint of the structural combination or the teaching of the cooperative functions of the structural elements."

"27. The evidence fails to establish that the claims of the Garrett et al patent were anticipated by prior publications."

"29. Defendant has admitted constructing and selling their type 'Δ' valves of a structure substantially identical to that shown in its Bulletin 550, Plaintiff's Exhibit 57, and Defendant's advertisement 'World Oil' Plaintiff's Exhibit 60. These Plaintiff's Exhibits 57 and 60 each show a valve which is an element by element duplication of the valve shown in Fig. 5 of the Garrett et al patent, Plaintiff's Exhibit 53."

"30. Claims 9 and 11 of the Garrett et al patent read verbatim upon the Defendant's valve in the identical manner that they are read upon Fig. 5 of the Garrett et al patent. Defendant's valve fully meets the literal requirements of the claims, and the Defendant's valve functions in a substantially identical manner, and is found to constitute an infringement of claims 9 and 11 of the Garrett et al patent which are considered representative of the claims of the patent."

123 F.2d 954. But it is also true that a patent for a combination can be valid, and we are of the clear opinion that, upon the facts found, this is one of that kind. On the case as a whole the judgment was right and it is affirmed.

On the question of venue, we agree with the district judge that the venue was properly laid, and that this is true under both section 1400(b) and section 1391 (c), 28 U.S.C.A. The district court, on evidence sustaining his finding, has found that at the time of filing the complaint, defendant had a legal and established place of business in the Eastern District of Texas, and had sold some of the infringing valves there. In addition, under the authority of our decision in Dalton v. Shakespeare, Co., 5 Cir., 196 F.2d 469, the venue was properly laid in the Eastern District of Texas.

Appellant's view, that the affirmance in Cardox Corp. v. C-O-Two Fire Equipment Co., 344 U.S. 861, 73 S.Ct. 102, by a divided court of the decision in C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 194 F.2d 410, which this court refused to follow, had the effect of disapproving our decision in the Dalton case, will not do. The court was divided four to four, and the decision is not authority for or against appellant's view.

The judgment was right. It is affirmed, and the cause is remanded for further and not inconsistent proceedings.