**Sidney ROSEN, Plaintiff,**

**v.**

**James F. KAHLENBERG and Kahlen-
berg-Globe Equipment Co.,
Defendants.**

**No. 66–441 Civ. T.**

United States District Court,
M. D. Florida,
Tampa Division.

Dec. 18, 1970.

Order Aug. 10, 1971.

John C. Malloy, Miami, Fla., Walter G. Finch, Baltimore, Md., for plaintiff.

Stefan M. Stein, Tampa, Fla., for defendant.

On Trial as to Liability

KRENTZMAN, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

*General Findings of Fact*

1. Plaintiff, Sidney Rosen, is a resident of the State of Maryland.

2. Defendant, James F. Kahlenberg, is a resident of the State of Florida, and does business in the State of Florida as Kahlenberg-Globe Equipment Company.

3. Plaintiff is the owner of United States Patent 2,907,614.

*Findings of Fact with Respect to Validity.*

5. United States Patent, 2,907,614, contains one claim, which is set forth in Column 4 of the patent. The claim pertains to a pump assembly wherein a piston reciprocates within a cylinder.

6. The patented pump is characterized in the claim as follows:

"A pump assembly in which a piston is adapted to reciprocate within a cylinder for pumping fluids comprising, a cylinder, means at one end of the cylinder through which the fluid is received and discharged, the other end of the cylinder having an opening for slidably receiving a piston rod which extends partly within and without the cylinder, said piston rod comprising an inner rod member and an outer sleeve member, the inner rod member having fixed to its end within the cylinder the innermost end of a piston, the opposite end of the piston comprising a bushing having a central aperture slidably receivable over the inner piston rod member, each piston end being slightly less in diameter than the inner diameter of the cylinder, a shoulder fixed inwardly from the fixed innermost end of the piston and about the end of the inner piston rod adjacent the fixed end of the piston and of larger diameter than the piston rod for receiving a plurality of elastic compression rings in which at least the center rings are of V cross-sectional form with flat side surfaces, the rings being of such width as to fill the space between the shoulder and the inner surface of the wall of the piston, the bushing end of the piston having a recess in its surface adjacent the shoulder for receiving a portion of the shoulder adjacent thereto to allow the bushing to be moved inwardly over the shoulder for a pre-determined distance against the compression rings without interference from the shoulder, the sleeve member of the piston rod telescoping the inner rod member from the slidable bushing end of the piston to a point without the piston adjacent the outer end of the inner rod member having its end within the cylinder abutting the surface of the bushing end of the piston about the aperture and opposite the compression rings, the outer end of the inner piston rod member beyond the opening in the cylinder being provided with an external thread and the outer end of the sleeve piston rod member beyond the opening in the cylinder being provided with an internal thread for threadably receiving the threaded end of the inner rod member for fixing the threaded end of the inner rod member for fixing the two piston rod members relative to each other and means for locking the two piston rod members in adjusted position, whereby adjusting the sleeve member relatively to the inner member of the sleeve member moves the bushing end of the piston relative to the fixed end of the piston for regulating the pressure on the compression rings and means on the outer end of the inner piston rod member for connecting the same to a crank mechanism."

7. A main advantage of the patented pump is that the structure described above provides the ability to adjust the internal seal of the pumps for wear or temperature gradients from the exterior of the pump without interference with the amount delivered per stroke. The seal is effected by rings in the piston head which are of a Teflon material. Teflon is a desirable material from a wearability standpoint, but has the disadvantage of having a coefficient of thermal expansion which is different than that of metal. Previously this caused leaks or sealing problems when Teflon material was employed. The structure of the pump permits adjustment of the seal because of temperature gradients without interference with the range of displacement of the structure or the distance between the roof of the cylinder and the top of the piston so that the delivered volume per stroke of the pump remains the same. Such adjustments do not interfere with batch sterility because removal of the piston assembly is not required.

8. The advantages of the structure of the patented pump were rapidly recognized. Soon after manufacture of the pump was commenced, demand for filling machines using the new pump was

such that plaintiff's licensee, National Instrument Company, soon established a factory and sales have expanded progressively.

9. Defendant, James F. Kahlenberg, an attorney and an engineer, also recognized the advantages of the patented pump. Until he began manufacture of the accused device, defendant had been a substantial purchaser of plaintiff's pump.

10. While the application for the patent in suit was pending in the United States Patent Office, the Examiner cited and considered the following United States patents:

United States Patent 2,807,213

United States Patent 1,474,201

United States Patent 1,744,565 .

United States Patent 1,806,078

United States Patent 2,420,929

United States Patent 2,600,061

United States Patent 2,757,994

These prior art patents were the subject of considerable testimony at the trial. These patents fall into two classes: First, pumps wherein an external adjustment is provided to vary the sealing surfaces of a piston head within the cylinder; and, second, the provision of a stack of rings which are adapted to be expanded for effecting a seal. Whether considered separately or collectively, these patents fail to anticipate or render obvious a structure such as the patented pump, which confirms the previous determination by the Patent Office.

11. The primary reference upon which the defendants based their case is a patent issued in 1916 for a syringe, United States Patent 1,222,424. United States Patent 1,222,424 is totally different in structure and in contemplated use from that of the continuously operating pump of the patent in suit. It is for use in one-shot injections, as opposed to a continuous high speed filling operation. United States Patent 1,222,424 specifies a piston head of soft rubbery material so that it can be pressed together. United States Patent 1,222,424

does not disclose a plurality of rings with vertically oriented, V-shaped mating surfaces, which nest within one another and permit circumferential expansion. Rather, the single piece plug is provided with horizontally oriented, A-shaped circumferential apexes which are spaced from one another. The plug is of a normal diameter which is oversized with respect to the diameter of the cylinder so that in reciprocal action within the cylinder, the soft rubbery apexes buckle or flex through a horizontal attitude each time there is a change in the direction of the stroke and are always in a trailing position with respect to the motion of the piston head to effect a wiper action against the glass with the soft rubber apexes flowing into the uneven surface of the cylinder wall. When not in use the soft rubber apexes stick to the uneven cylinder surface and, while an adjustment structure is provided to free the soft rubber from the glass wall, it is for a different problem than that faced by plaintiff in the patented pump. The syringe adjustment is without attention to maintaining the relative position of the top of the piston head with respect to the top or roof of the cylinder. Additionally, in United States Patent 1,222,424, there is no provision for separate entrance and exit passageways to permit withdrawal of discrete amounts of fluid from one large container and the discharge of the separate discrete amounts of that fluid through a separate passageway to smaller vessels. Plaintiff utilized oppositely acting one-way valves to close one line while the other is opened. Such structure is not suggested by United States Patent 1,222,424.

12. A second reference relied upon by defendants French Patent .398,899. French Patent 398,899 appears to have piston composed of a stack of leather washers, each of which has a differently sized opening and when stacked in the proper order define a cone-shaped recess to accommodate a truncated cone-shaped member which is adapted to be moved to expand some, but not all, of the washers

against the wall of the cylinder. It appears that any adjustment by movement of the cone involves a change of the displacement of the piston head with respect to a cylinder in which it might be inserted, a problem overcome in the patented pump. The French Patent appears to have a different operating mechanism composed of at least three concentric piston rod members that move relative to one another in contrast to the two of the patented device. No evidence was adduced to show that the French Patent is operative or could be rendered operative. French Patent 398,899 does not disclose or render obvious the mechanism of the patented pump.

13. Considered separately, United States Patent 1,222,424, and French Patent 398,899 do not disclose or render obvious the patent in suit.

14. Portions of engineering and professional publications relied upon by defendant do not disclose or render obvious the patent in suit.

15. Considered collectively, United States Patent 1,222,424, French Patent 398,899, engineering and professional publications, introduced by defendant, and the United States patents cited and considered by the patent examiner do not disclose or render obvious the patent in suit.

16. United States Patent 2,907,614 is valid.

*Findings of Fact with Respect to Infringement.*

17. In claiming non-infringement, defendants contend that two important differences exist between the claim of the patent in suit and the accused pump. First, the accused pump has an outer piston rod member which is severed into two pieces, and second, the recess described in the claim of the patent in suit is accomplished differently in the accused pump. Apart from these two changes, the patented pump and the accused pump are identical.

18. There is no difference in the result or operation of the patented and ac-

cused pumps arising by reason of the severance of the sleeve into two pieces. The claim of the patent shows that the outer end of the piston rod member, which is provided with threads, is for the purpose of transmitting a pushing motion to the end of the piston to compress the V-rings. The accused device operates in the same manner. The separation of the sleeve into several sections is without significance, the result being the performance of the same function in the same way. The claim of the patent describes the accused pump in this respect.

19. There is no difference in the function, operation or structure of the patented and accused pumps arising by reason of the modifications of the recess of the accused pump. The claim of the patent calls for:

" . . . the bushing end of the piston having a recess in its surface adjacent the shoulder for receiving a portion of the shoulder adjacent thereto to allow the bushing to be moved inwardly over the shoulder for a predetermined distance against the compression rings without interference from the shoulder. . . . "

At trial there was considerable testimony, discussion and anguish as to the meaning of the terms "bushing", "recess", "in its surface", and "shoulder." Plaintiff may or may not have anticipated the particular sort of recess arrangement adopted by defendant in the accused pump, but in any event it is clear that the recess of the accused pump, fits within the language of the claim. The recess in the accused pump is not in the surface of the metal surface of the bushing end of the piston, but is in the outermost Teflon V-ring between the portion of the piston adjacent to the shoulder and the first Teflon ring. Without broadening the language of the claim, such an arrangement of the recess is in the surface of the bushing end of the piston, and performs the identical function of the recess arrangement of the patented pump in an identical manner.

20. The method of operation, structure and function of the accused pump is the same as that of the patented pump. The differences described above are minor and the claim itself contemplates the design of the accused pump.

21. The patent in suit, United States Patent 2,907,614, is infringed by the accused device of the defendants.

*Findings of Fact with Respect to Defendants' Counterclaim of False Marking.*

■ 22. Defendants based their counterclaim of false marking on the premise that plaintiff has marked as patented, pumps which utilize a recess arrangement similar to that utilized in the accused pump. As stated above, the recess arrangement of the accused pump is contemplated by and included in the language of the claim of United States Patent 2,907,614. The evidence shows that plaintiff's pumps were constructed in accordance with the claims of its patent, and that the pumps were properly marked.

*Findings of Fact with Respect to Defendants' Counterclaim of Violations of Anti-Trust Laws.*

23. There is no evidence to support defendants' counterclaim of violations of anti-trust laws. The evidence does not support the allegation that plaintiff is guilty of illegal monopolization under the provisions of the Sherman and Clayton Anti-Trust Acts.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction and venue under 28 U.S.C. §§ 1338(a), 1400(b).

2. Plaintiff's action is for infringement of United States Patent 2,907,614, plaintiff being the owner of said patent, brought pursuant to 35 U.S.C. § 281.

3. Defendant denies infringement and asserts invalidity of the patent in suit and counterclaims on the basis of violations of anti-trust laws, and on the basis of false marking. 15 U.S.C. §§ 1–3, 13–15, 26 and 45; 35 U.S.C. §§ 271, 285, 292.

4. United States Patent 2,907,614 is a good and valid patent. The claim of the patent shows a substantial, unobvious improvement over the prior art and the patented pump, the validity of which is challenged, was therefore patentable. 35 U.S.C. § 103; United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L. Ed.2d 572 (1966).

5. The patent in suit discloses an operative device in compliance with applicable patent law. 35 U.S.C. § 112.

6. The statutory presumption of validity of the patent in suit arising by virtue of issuance of the patent by the Patent Office has not been overcome. 35 U.S.C. § 282.

■ 7. The disclosure of a foreign patent is to be measured as anticipatory by what it clearly and definitely discloses. Mott Corporation v. Sunflower Industries, Inc., 314 F.2d 872, 880 (10 Cir. 1963). An American patent is not anticipated by a prior foreign patent, unless the latter exhibits the invention in such full, clear and exact terms as to enable a person skilled in the art to practice it without the necessity of making experiments. A vague reference amounting to an opinion of a foreign patent officer regarding the operation of some device but lacking any description of its construction cannot be considered substantial evidence on the issue of anticipation. Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467, 478 (9 Cir. 1961).

■ 8. The claim of the patent in suit is not anticipated by or obvious in the light of the prior art. The elements of the patent in suit may have been well known in the prior art, but the combination of those elements produced a new, unobvious and useful device. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Zero Manufacturing Co. v. Mississippi Milk Producers Association, 358 F.2d 853 (5 Cir. 1966); Duo-Flex Corporation v. Build-

ing Service Company, 322 F.2d 94 (5 Cir. 1963).

9. While commercial success is not a substitute for patentable invention, it is evidence in support thereof. Guiberson Corp. v. Garrett Oil Tools, Inc., 205 F.2d 660 (5 Cir. 1953), cert. den. 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390, reh. den. 346 U.S. 917, 74 S.Ct. 273, 98 L.Ed. 413.

10. United States Patent 2,907,614 is valid.

11. In determining whether there is infringement, it is the claims which measure the grant that control. McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800 (1891).

12. Separation of one integral part of a patented device into two does not avoid infringement where the two parts do substantially what was done by the single part. Industrial Instrument Corporation v. Foxboro Company, 307 F.2d 783, 786 (5 Cir. 1962); Skelton v. Baldwin Tool Works, 58 F.2d 221, 227 (4 Cir. 1932).

13. In determining whether an accused device infringes a valid patent, resort must be had in the first instance to the words of the claim. If the accused matter falls within the claim, as found in this instance, infringement is made out and that is the end of it. Graver Tank & Mfg. Co., Inc. v. Linde Air Products, 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

14. United States Patent 2,907,614 is infringed by the accused device.

15. Defendants have failed to establish their counterclaim under 35 U.S.C. § 292 which charges false marking. Accordingly, Count II of the counterclaim is dismissed.

16. Insufficient evidence was submitted at trial with respect to defendant's allegations relating to violations of anti-trust laws. Accordingly, Count I of the counterclaim is dismissed.

17. Plaintiff is entitled to a permanent injunction against any future infringement by defendants of the claim of United States Patent 2,907,614.

18. Plaintiff is entitled to an award of damages under 35 U.S.C. § 284 in compensation for the infringing acts of defendants.

19. The issue of damages not having been tried previously, this cause will be set promptly for pretrial conference and trial on that issue.

It is so ordered.

### On Trial as to Damages

### ORDER

The Court having considered defendant's motion for new trial filed May 11, 1971, and being advised, the same is denied.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Plaintiff, Sidney Rosen, is a resident of the State of Maryland.

2. Defendant, James F. Kahlenberg, is a resident of the State of Florida, and does business in the State of Florida as Kahlenberg-Globe Equipment Company.

3. Plaintiff is the owner of United States Letters Patent 2,907,614.

4. United States Patent 2,907,614 is valid and has been infringed by the defendant, Findings of Fact and Conclusions of Law, December 18, 1970.

5. United States Letters Patent 2,907,614 is for a pump assembly for pumping fluids and necessarily includes valve means, expressed in the claim of the patent as "means at one end of the cylinder through which the fluid is received and discharged" and more expressly identified in the patent, column 2, lines 5 and 6 as "valves 28 and 30" and illustrated in Fig. 2 at the upper left as ball type valves.

6. The pump is for pumping predetermined amount of fluid for use on a filling machine, column 1, lines 15–20. Such machines are known as volumetric filling machines.

7. Volumetric filling machines are machines which fill containers by de-

positing a predetermined volume in them as compared to filling a container to a predetermined level, the latter filling method often being referred to as a liquid leveling type. Volumetric filling is required under certain conditions by the U.S. Federal Food & Drug Administration.

8. An important advantage of the patented pump is that the seal of the pump can be re-adjusted externally so that the effects of wear, temperature and other factors can be quickly compensated for in operation without effect upon the accuracy of the delivered volume.

9. Ninety percent of the volumetric filling machines which utilize the patented pump are purchased because of the particular job requirements of the purchasers which are met by the features of the patented pump (R 12–13). In pricing, the defendants admit that they try to select a price for the whole machine (R 85). Of the patented pumps which are sold, only about eight percent are sold separately, and the rest are sold as part of the volumetric filling machines. The plaintiff has not licensed anyone except the company which he founded, National Instrument Company, to make the patented pump, and he has not made efforts to do so in order to enjoy the profits on the sale of the volumetric filling machines, the demand for which is primarily because of the patented pump.

10. Plaintiff did not attempt to prove his damages for infringement as such, or of any existing royalty arrangements. The Court has considered the range of royalty percentages as presented by defendant's expert witness. In an attempt to establish a reasonable royalty to be recovered plaintiff sought to obtain and present evidence as to defendant's profits from the use of the infringed device with the same to be considered by the Court as a factual guide in the setting of a reasonable royalty.

11. Notwithstanding early notice to the defendant that his activities were regarded as an infringement upon the patent in suit, at no time, before or after the suit was filed, did the defendant institute any type of cost accounting system by which cost could be allocated to the activity found to infringe the patent and to distinguish such costs from the costs attributable to other activities of the defendant. The defendant did not maintain or prepare a general ledger, or cash sheets and disbursement records. He did not ever prepare a balance sheet, a trial balance, or a profit and loss statement for any reason. From the defendant's records it is impossible to determine the cost of the specific items made and sold, whether it be the infringing pumps, the parts of the pump, such as the valves which are required for operation of it, or the volumetric filling machines on which the pumps are used. Apart from the records the testimony adduced by the defendant also fails to allocate any deductions to the particular products.

12. The income tax returns, Exhibit C, for the relevant years are the best available financial records, which the defendant has, Exhibit E. These returns show gross sales by the defendant for all his products of $539,271.00 for the relevant years, 1962 through 1969 inclusive, Exhibit H.

13. Giving the defendant the benefit of all doubt and assuming that the cost of sales shown on the income tax returns is correct, a *gross* profit of $361,704.00 was realized for the years in question, that is, before subtracting deductions which are customarily made in order to arrive at *net* profit.

14. Since the defendant cannot allocate deductions because of a failure to keep adequate records, the deficiencies should not penalize the plaintiff. Ignoring all of the deductions from gross profit during the relevant period because of the failure of the defendant to allocate, the total profit realized by the defendant was $361,704.00.

15. The percentage of overall gross profit the defendant enjoyed on total

dollar volume of sales was 67%. This was determined according to accepted accounting principles and arrived at by dividing the total gross profits by the total gross sales in the relevant period.

16. Since the total sales of the volumetric filling machines including the pump and the required valves were $96,516.00, the gross profit, 67% of this figure, is $64,665.00. This is the gross profit made by reason of the infringing activity without subtracting any deductions in view of the failure of the defendant to allocate them. If the amount of the profit on the sales of the filling machines is reduced by 10% because ninety percent of the sales are because of the patented pump, this gross profit is reduced to $57,705.00.

17. Similarly computed, ignoring completely the sales of the volumetric filling machines and considering only the pumps including the required valves, the total sales were $26,914.00. The gross profit or 67% of this figure is $18,032.00; this is the profit made directly from the manufacture and sale of the pumps without allowance for any deductions.

18. While the defendant has failed to show any reasonable basis to prorate the deductions, it is without question that some of the expenses involved were attributable to the infringing activity.

19. If all of the deductions from gross income which were claimed by the defendant in his income tax returns over the years in question are assumed to be proper in every respect, and if these deductions are spread equally over the sale of all products, disregarding the fact that they cannot be allocated, the net profit of the defendant, determined by subtracting the total of these deductions from the gross profit was $102,330.00.

20. From the defendant's records, the plaintiff's expert, a certified public accountant, demonstrated that the sales of the pumps and required valves totaled $26,914.00. This was 5% of the total sales; and, in accordance with accepted accounting principles, it is proper to ascribe 5% of the net profit to these sales. The net profit on these sales according to this method is $5,117.00.

21. From the defendant's records the plaintiff's expert demonstrated that the sales of the volumetric filling machines, without the pump assemblies, totaled $69,602.00. This is 12.9% of the total sales; and, in accordance with accepted accounting principles, it is proper to ascribe 12.9% of the net profit as being the result of these sales. The net on the sales of the volumetric filling machines is $13,200.00. This should be reduced somewhat because not all, but 90% of the sales of the volumetric filling machines are made to meet the particular job requirements of the purchasers and require the patented pump. Therefore, of this $13,200.00, 90% is properly attributable to the patented device.

22. Giving the defendant the benefit of all deductions, the profit attributable to the infringing activity is the sum of these two components:

All of net profit attributable
to the pump assemblies: $5,117.00
90% of net profit attributable
to the volumetric filling machines: 11,880.00
Infringement profits: $16,997.00

23. There is a serious question as to whether or not all or any of the deductions claimed should be subtracted for the period during which the infringing activity took place. The claimed deductions total $259,374.00, but as was admitted at the trial, this figure includes $7,125.00 in one year for the erection of an addition to defendant's factory which was treated as an expense for that year. Additionally, this sum includes unallocated deductions for a) travel expenses which averaged between $5,000.00 and $6,000.00 per year and total in excess of $50,000.00, b) advertising expenses of $26,594.00, c) unspecified general and miscellaneous expenses, $14,619.00, and d) automobile expenses, $8,182.00, to mention a few, Exhibit J.

24. While it is difficult to avoid penalizing the plaintiff for such deducted sums, and no effort is made by the defendants to allocate such items, under all of the evidence in this case the Court finds that the above sum of $16,997.00 is adequate to compensate the plaintiff.

In determining this sum, the Court has also considered: the range of royalty percentages as explained by the defendant's expert witness, the plaintiff's practice of not seeking to license others in order that he enjoy the profit from the sale of volumetric filling machines equipped with his patented pumps, the dollar volume of sales by the defendant of the infringing equipment, the extent of the availability of such machines with the features of the patented pump on the market in the United States, and that 90% of the volumetric filling machines sold by the plaintiff are sold to purchasers whose requirements call for the advantages of the patented pump; and the Court finds under all of the evidence in this case that this sum is adequate and a reasonable royalty with interest to compensate for the use made of the plaintiff's invention.

25. The plaintiff has clearly incurred costs in connection with this case and is entitled to an award for its costs upon submission of its bill of costs.

26. The defendant has raised the equitable defense of laches. The evidence fails to show any basis for the defence. Trial Exhibits 14–27 trace the relationship between the parties and illustrate that the plaintiff objected to their copying of the patented product at an early date, and when it became apparent that the defendant did not intend to respect the patent, this law suit was filed. There is a total absence of proof of deceitful acts, silence or acquiescence by the plaintiff, or that the plaintiff intentionally, or recklessly, induced the defendant to act to his prejudice or detriment.

27. There was no willful infringement and this case is not an exceptional one.

28. Interest at 6% per annum shall run from the date of final judgment.

## CONCLUSIONS OF LAW

1. Title 35 of the United States Code Section 284 controls with respect to the damages for the infringement previously found to have occurred.

2. Since plaintiff has not proven damages, 35 U.S.C. 284 as interpreted by Aro Manufacturing Company v. Convertible Top Replacement Company, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) requires an award of reasonable royalties.

3. While the profits of defendant may be examined, they are only one of many criteria which might be considered in determining a "reasonable royalty", Georgia Pacific Corporation v. United States Plywood Corporation, 243 F.Supp. 500 (U.S.D.C. So.D.N.Y.1965).

4. The profits derived by an infringer as a result of an infringing activity are a proper factor to be considered in determining a reasonable royalty to compensate a patent holder for use of the invention; and in no event is an award for patent infringement to be less than a reasonable royalty, 35 U.S.C. § 284.

5. In general, where the defendant's profits from infringing activities have been co-mingled with profits from noninfringing activity, a plaintiff is entitled to the defendant's entire profits, and the defendant has the burden of proof of apportioning the profits and removing confusion as to the source of the profits, Westinghouse Electric and Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U.S. 604; 32 S.Ct. 691, 56 L.Ed. 1222; Levin Bros. v. Davis Mfg. Co., (CA8, 1934), 72 F.2d 163, 164; Horvath v. McCord Radiator & Mfg. Co., (CA6, 1938), 100 F.2d 326, cert. den. 308 U.S. 581, 60 S.Ct. 101, 84 L.Ed. 486, reh. den. 308 U.S. 636, 60 S.Ct. 171, 84 L.Ed. 529.

6. Where the defendant does not meet its burden of proving a proper separation of the profits, he does so at his peril and doubts should be resolved against

him, Bros, Inc. v. W. E. Grace Mfg. Co., 320 F.2d 594 (5 Cir.1963). Henry Hanger & Display Fixture Corporation of America et al. v. Sel-O-Rak Corporation (CA5, 1959), 270 F.2d 635.

7. Where the patented product is for use in a machine and the entire market value of the machine is dependent upon the patented structure, the entire market value of the machine should be included in computing infringement damages, American Safety Table Co. v. Schreiber, (CA2, 1969), 415 F.2d 373; cert. den. 396 U.S. 1038, 90 S.Ct. 683, 24 L.Ed.2d 682, as has been long recognized Hurlbut v. Schillinger, (1889) 130 U.S. 456, 472, 9 S.Ct. 584, 32 L.Ed. 1011.

8. Where profits are made from the sale of a machine which includes an infringing device, and less than the entire market value of the machine is attributable to the patented component, the degree to which the sale or the whole machines was attributable to the patented device is a question of fact. Thus, the percentage of profit from the sale of an entire machine which includes an infringing device is a matter within the discretion of the Court based upon all of the evidence before it. Graham v. Jeoffroy Mfg., Inc., (CA5, 1958), 253 F.2d 72, 78 (60% of the profit from the sale of a plow found to be attributable to the inclusion of a patented spring clamp device).

9. There is no laches on the part of the plaintiff, Shaffer et al. v. Rector Well Equipment Co. (CA5, 1946) 155 F.2d 344; Foxboro Co. v. Taylor Instruments Co., 58 F.Supp. 313 (W.D.N.Y.1944), *rev'd* 157 F.2d 226 (2 Cir.1946); Holland v. American Steel & Foundries, 95 F. Supp. 273 (D.Ill.1950); Hartford-Empire Co. v. Swindell Bros., 96 F.2d 227 (CA4, 1938).

10. Only simple interest at 6% per annum from the date of judgment, Radiator Specialty Company v. Micek, 395 F.2d 763 (CA9, 1969), Chesapeake and Ohio Ry. Company v. Kaltenbach, 124 F.2d 375 (CA4, 1941) and Florida Statute Section 55.03, F.S.A.

11. Damages should not be increased because defendant acted reasonably on advice of counsel, Union Carbide Corporation v. Graver Tank and Manufacturing Company, 345 F.2d 409 (CA7, 1965).

12. Attorney's fees should not be awarded since this case is not an exceptional one under 35 U.S.C. § 285, Georgia-Pacific v. United States Plywood, supra.

13. Final judgment will be entered.